## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| SIERRA CLUB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ _____ |
| | ) |
| AMEREN CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| . | ) |

## COMPLAINT

Plaintiff, Sierra Club, by its undersigned counsel, alleges as follows:

### INTRODUCTION

1. This is an action for civil penalties, declaratory and injunctive relief, and costs and fees under the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401, *et seq.* and the federally enforceable Missouri laws and regulations approved by the U.S. Environmental Protection Agency ("EPA") as part of Missouri's State Implementation Plan ("SIP") under the CAA.

2. Sierra Club seeks an order requiring Defendant, Ameren Corporation, to comply with the requirements of the CAA and the Missouri SIP at three coal-fired power plants it owns and operates in Missouri; to forfeit penalties for violations of the

CAA that occurred on or after March 5, 2009, and continue to occur at those plants; and to mitigate the effects of its past illegal emissions of air pollution.

3.     Defendant owns and operates coal-fired boilers at each of the three power plants at issue in this case. Each boiler emits thousands of tons of carbon dioxide, nitrogen oxides, and sulfur oxides every year as well as significant amounts of particulate matter, carbon monoxide, mercury, and other hazardous air pollutants. Those pollutants contribute to climate change, respiratory distress, cardiovascular disease, and premature mortality. Nitrogen oxides and sulfur oxides in the air also contribute to acid rain, which sterilizes lakes and damages property. The presence of those pollutants in the atmosphere is associated with increased hospital admissions and emergency room visits.

## PARTIES

4.     Plaintiff Sierra Club is an incorporated, not-for-profit organization with its headquarters at 85 Second Street, 2nd Floor, San Francisco, California and its Missouri Chapter Office at 7164 Manchester Ave., Maplewood, MO 63143. Since its founding in 1892, Sierra Club has pursued its mission to explore, enjoy, and protect the planet. Plaintiff's purpose includes reducing and eliminating pollution from the mining, combustion, and waste disposal of coal, which negatively affects Sierra Club's members as well as members of the public. Sierra Club has over 600,000 members nationwide, including over 8,700 members in Missouri.

2

5.     Defendant Ameren Corporation ("Ameren") is a Missouri corporation with its office at 1901 Chouteau Avenue, St. Louis, MO 63103.

6.     Ameren is a "person" within the meaning of 42 U.S.C. §§ 7602(e), 7604(a)(1), (a)(3), and 10 C.S.R. 10-6.020(2).

7.     Ameren (dba AmerenUE or Ameren Missouri) owns and operates, and at all times relevant to this complaint has owned and operated, the three coal-fired power plants that are the subject of this complaint: the Labadie Energy Center, in Labadie, Franklin County, Missouri; the Meramec Power Plant, in St. Louis, Missouri; and the Rush Island Energy Center, in Festus, Jefferson County, Missouri (collectively, the "Power Plants").

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604, and 28 U.S.C. §§ 1331, 1355, and 2201. The relief requested by the Plaintiff is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 7604.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in, and all or a substantial part of the events or omissions giving rise to the claims herein occurred in, the Eastern District of Missouri. Venue is also proper pursuant to 42 U.S.C. § 7604(c)(1) because each of the Power Plants subject to this complaint is located within the Eastern District of Missouri.

3

## NOTICE

10.     On December 11, 2013, Sierra Club provided notice to Defendant, the State

of Missouri, and the EPA Administrator via certified mail of certain claims for which

notice is required pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. part 54.

11.     More than sixty days have passed since Sierra Club provided notice of the

claims alleged herein.

12.     Neither the EPA Administrator nor the State of Missouri has commenced

or is diligently prosecuting a civil action in a court of the United States or a state to

require compliance with the standards, limitations, or orders of which Defendant is

alleged by Sierra Club to be in violation.

## GENERAL ALLEGATIONS

### The Power Plants at Issue

13.     Defendant wholly owns and operates the Meramec, Labadie, and Rush

Island power plants.

14.     The Labadie Energy Center is a fossil fuel-fired electric utility steam

generating station comprised of four tangentially fired coal boilers installed between

1966 and 1967. It is located at 226 Labadie Power Plant Road, Labadie, Franklin County,

Missouri.

15.     Meramec power plant is a fossil fuel-fired electric utility steam generating

station comprised of four coal-fired boilers. Boilers 1 and 2 are tangentially fired boilers,

4

13, 1997. 40 C.F.R. Part 70, Appendix A. Missouri's Title V operating permit program is codified at 10 C.S.R. 10-6.065(6).

21.     The CAA and Missouri's Title V operating permit program have, at all relevant times, made it unlawful for any person to violate any requirement of a permit issued under Title V, or to operate a major source except in compliance with a Title V permit. 42 U.S.C. § 7661a; 40 C.F.R. § 70.7(b); 10 C.S.R. 10-6.065(1)(D)1.

22.     The CAA and Missouri's Title V operating permit program have, at all relevant times, required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the CAA and the requirements of the applicable SIP. 42 U.S.C. § 7661c(a); 40 C.F.R. § 70.6(a)(1); 10 C.S.R. 10-6.065(6)(C).

23.     Missouri's Title V operating permit regulations further specify that all terms and conditions of a Title V operating permit that are designated in the permit as federally enforceable are enforceable by citizens under the provisions of the CAA. 10 C.S.R. 10-6.065(6)(C)2.A.

## Limits on the Power Plants' Opacity in the Missouri SIP

24.     "Opacity" refers to a facility's visible emissions. Opacity is measured as a percentage; a measurement of 100% opacity means that no light is transmitted through the plume, and a measurement of 0% opacity means that all light is transmitted through the plume.

6

25.    Opacity is a general indicator of the amount of PM emitted from the

source in question. The higher the opacity percentage, the more PM emitted by the

source.

26.    The Missouri SIP contains the following limits on opacity:

(3)(A). Maximum Visible Emissions Limitations. Unless specified otherwise in
this rule, no owner or other person shall cause or permit to be discharged into
the atmosphere from any source, not exempted under this rule, any visible
emissions greater than the limitations in the following table:

| Area of State | Visible Emission Limitations | |
|---|---|---|
| | Existing Sources | New Sources |
| Kansas City Metropolitan Area | 20% | 20% |
| St. Louis Metropolitan Area | 20%* | 20% |
| Springfield-Greene County Area | 40% | 20% |
| Outstate Area | 40% | 20% |

***

(B) Visible Emissions Limitations, Exceptions Allowed In One (1) Six (6)-
Minute Period. The visible emissions limitations in the following table
shall be allowed for a period not aggregating more than one (1) six (6)-
minute period in any sixty (60) minutes:

| Area of State | Visible Emission Limitations | |
|---|---|---|
| | Existing Sources | New Sources |
| Kansas City Metropolitan Area | 60%** | 60%** |
| St. Louis Metropolitan Area | 40% | 40% |
| Springfield-Greene County Area | 60%** | 60%** |
| Outstate Area | 60% | 60% |

10 C.S.R. 10-6.220.

27.    10 C.S.R. 10-6.220 is an EPA-approved component of the Missouri SIP. 40

C.F.R. § 52.1320(c); 65 Fed. Reg. 64,145 (Oct. 26, 2000). It is therefore federally

enforceable, including by citizens under the Clean Air Act's citizen suit provision.

7

28.     The Power Plants are all located within the "St. Louis Metropolitan Area"

for purposes of the opacity limits in the Missouri SIP. 10 CSR 10-6.020(2)(S)47.

Accordingly, the Missouri SIP imposes a 20% limit on opacity, except for one 6-minute

period in any 60 minutes of not more than 40% opacity, on each of the Power Plants'

boilers.

### Limits on the Power Plants' Opacity in Applicable Title V Permits

29.     Each of the Power Plants hold, operate, and emit air pollutants pursuant

to a Title V permit that includes limitations on the opacity from its stacks. In Missouri,

such permits are called Part 70 Operating Permits (named after 40 C.F.R. Part 70, the

body of federal regulations that provide minimum standards for state operating permit

programs under Title V of the Clean Air Act).

30.     The Labadie power plant operates under Part 70 Operating Permit No.

OP2011-020A. This permit's Condition (B-1 through B-4)—002, on pg. 8, limits the

emissions from Labadie's coal-fired boilers to 20% opacity, except for one 6-minute

period per hour of not more than 40% opacity. Each of Labadie's prior Title V / Part 70

operating permits in effect on or after March 5, 2009 contains substantially the same

limit.

31.     The Meramec power plant operates under Part 70 Operating Permit No.

OP2009-017. This permit's Condition PW003, on pg. 8, limits the emissions from

Meramec's coal-fired boilers to 20% opacity, except for one 6-minute period per hour of

8

not more than 40% opacity. Each of Meramec's prior Title V / Part 70 operating permits in effect on or after March 5, 2009 contains substantially the same limit.

32. The Rush Island power plant operates under Part 70 Operating Permit No. OP2010-047. This permit's Condition (EU001 and EU002)—002, on pg. 8, limits the emissions from Rush Island's coal-fired boilers to 20% opacity, except for one 6-minute period per hour of not more than 40% opacity. Each of Rush Island's prior Title V / Part 70 operating permits contains substantially the same limit.

33. The opacity limits in the Title V permits for each of the Power Plants are federally enforceable under the CAA's citizen suit provision. 42 U.S.C. § 7604(a)(1), (f)(4); 10 C.S.R. 10-6.065(6)(C)2.A.

## Defendant's Reporting of Opacity Emissions

34. Each of the Power Plants operates a continuous opacity monitoring system ("COMS"), which measures and records the opacity at each boiler that is subject to an opacity limitation in six-minute increments.

35. Defendant is required to report each period of excess opacity emissions on a quarterly basis to the Missouri Department of Natural Resources ("MDNR"). These quarterly opacity reports must identify the magnitude, in actual percent opacity, of all six-minute averages of opacity more than the applicable opacity standard for each hour of operation.

9

36.     Defendant's quarterly reports of excess opacity emissions must be accompanied by a statement, signed by a responsible official on behalf of Defendant, containing the following certification: "I certify, based on information and belief formed after reasonable inquiry, the statements and information in this document are true, accurate and complete." False certifications are violations of the CAA and are punishable by civil and criminal sanctions.

37.     According to the reports submitted by Defendant to MDNR, the Power Plants have violated their opacity limits on thousands of occasions in recent years. During the period March 5, 2009 through March 31, 2013, the Power Plants collectively emitted excess opacity from their coal-fired boilers on at least 7,880 separate occasions, as shown in the table below. Although March 31, 2013 was the date of the last publicly available opacity data prior to the notices of intent provided to Defendant, numerous violations of applicable opacity limits have occurred at each of the Power Plants since that date, and they continue to occur.

*Ameren Missouri Opacity Violations (3/5/09 – 3/31/13)*

| Power Plant / Unit | Total Minutes of Reported Excess Opacity Emissions | Total Discrete 6-Minute Periods of Excess Opacity |
|---|---|---|
| Labadie Unit #1 | 8,214 | 1,369 |
| Labadie Unit #2 | 7,614 | 1,269 |
| Labadie Unit #3 | 3,594 | 599 |
| Labadie Unit #4 | 4,362 | 727 |
| Meramec Unit #1 | 4,488 | 748 |
| Meramec Unit #2 | 5,448 | 908 |
| Meramec Unit #3 | 5,322 | 887 |
| Meramec Unit #4 | 2,832 | 472 |
| Rush Island Unit #1 | 3,624 | 604 |
| Rush Island Unit #2 | 1,782 | 297 |
| **Total 6-Minute Periods of Excess Opacity Emissions:** | | 7,880 |

10

and Boilers 3 and 4 are front wall fired boilers. The Meramec power plant is located at 8200 Fine Road, St. Louis, St. Louis County, Missouri.

16.     The Rush Island power plant is a fossil fuel-fired electric utility steam generating station comprised of two tangentially fired coal boilers installed in 1971. It is located at 100 Big Hollow Road, Festus, Jefferson County, Missouri.

## The Clean Air Act

17.     The CAA requires that the EPA promulgate National Ambient Air Quality Standards (NAAQS), which are upper limits on air pollution in the ambient air, to protect public health and welfare with an adequate margin of safety. 42 U.S.C. § 7409.

18.     42 U.S.C. § 7410 requires each state to adopt and to submit to EPA for approval a State Implementation Plan (SIP) that provides for the attainment and maintenance of the NAAQS. SIP requirements are federally enforceable in citizen suits under 42 U.S.C. § 7604(a)(1).

19.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the CAA are collected in one place and that sufficient compliance testing and reporting occur.

20.     EPA granted interim approval of the State of Missouri's Title V operating permit program effective on May 13, 1996. EPA granted final approval effective on June

5

## Sierra Club's Standing

38.     Opacity is a measurement of the pollution contained in the emissions from a power plant. For example, "[a]n opacity of one hundred percent (100%) represents a condition in which no light is transmitted, and the background is completely obscured." 10 C.S.R. 10-6.020(2)(O)9.

39.     The measurement and limitation of opacity is used as a surrogate for the amount of particulate matter ("PM") in a plant's emissions. According to the U.S. Environmental Protection Agency ("EPA"), "opacity is used as a surrogate for PM emissions and provides qualitative information on the operation and maintenance of particulate control equipment." EPA, Current Knowledge of Particulate Matter (PM) Continuous Emission Monitoring (September 2000) 2-1, *available at* http://www.epa.gov/ttn/emc/cem/ pmcemsknowfinalrep.pdf.

40.     The opacity limits contained in the relevant regulations and permits applicable to Defendant's Power Plants in this case were developed for and intended as secondary limits on PM emissions.

41.     PM is a regulated air pollutant under the CAA and is subject to EPA-promulgated national ambient air quality standards. Exposure to PM causes or contributes to a range of negative health effects, including asthma, respiratory disease, cardiac disease, and premature death, and EPA has concluded that there is no level of exposure to fine PM pollution that can be considered "safe." PM emissions also

11

contribute to visibility impairment, regional haze, and diminished aesthetic enjoyment
of the environment.

42.     Sierra Club has members who live, work, and recreate in and around the
cities of Labadie, St. Louis, and Festus, Missouri, as well as other areas downwind from
the Power Plants. These members are negatively affected by air pollution emissions
from the Power Plants, including Defendant's emissions of PM pollution. These
members are exposed to air pollution emitted by one or more of the Power Plants, and
the health, welfare, and aesthetic and recreational interests of these members have been
and continues to be harmed by that air pollution.

43.     Exposure to air pollution emitted by Defendant's Power Plants, including
their emissions of PM, increases the risk that these Sierra Club members will suffer from
acute or chronic respiratory, cardiac, or other diseases in the future. It also increases the
risk that members of their families, their friends, and their community members will
suffer from one or more of the same ailments.

44.     These Sierra Club members also enjoy a number of recreational activities,
including camping, boating, and wildlife observation, in the vicinity of, or downwind
from, one or more of Defendant's Power Plants. Seeing the smoke plumes from
Defendant's Power Plants reduces these members' enjoyment of those recreational
activities.

12

45.     Because there is no safe level of exposure to particulate matter pollution, any increase in exposure to particulate matter increases the risk of acquiring respiratory or cardiac disease, and any decrease in exposure decreases the risk of acquiring those diseases, regardless of whether any regulatory standard or limitation on particulate matter pollution is exceeded.

46.     An order of this Court enjoining Defendant from operating the Power Plants except in accordance with the CAA, requiring Defendant to comply with applicable emission limitations at the Power Plants (including limitations on opacity), imposing civil penalties for violations of the CAA, and mitigating past illegal emissions will redress the injuries to Sierra Club's members because the result will be a reduction in air pollution (including opacity and PM pollution) from the Power Plants.

## FIRST CLAIM FOR RELIEF
**(Violation of Title V Permit Limits on Opacity at the Labadie Power Plant)**

47.     Plaintiff realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

48.     On thousands of occasions on and after March 5, 2009, Defendant emitted visible emissions from the coal-fired boilers and stacks of the Labadie power plant in excess of the opacity limitation contained in the Part 70 Operating Permit No. OP2011-020A, Condition (B-1 through B-4)—002, or the comparable opacity limitations in the Labadie power plant's prior Title V / Part 70 operating permits.

49.     Each 6-minute period during which visible emissions from the Labadie power plant exceeded the opacity limitations contained in Permit No. OP2011-020A (or its predecessor permits) constitutes a separate and distinct violation of that permit and the CAA. 42 U.S.C. § 7661a(a).

50.     These opacity violations are ongoing, and will continue unless and until they are abated by an order of the Court.

51.     These opacity violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

### SECOND CLAIM FOR RELIEF
### (Violation of the Opacity Limits in the Missouri SIP at the Labadie Power Plant)

52.     Plaintiff realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

53.     On thousands of occasions on or after March 5, 2009, Defendant emitted visible emissions from the coal-fired boilers and stacks of the Labadie power plant in excess of the opacity limitations contained in the Missouri SIP at 10 C.S.R. 10-6.220(3)(A)-(B).

54.     Each 6-minute period during which visible emissions from the Labadie power plant exceeded the applicable opacity limit in 10 C.S.R. 10-6.220(3)(A)-(B) constitutes a separate and distinct violation of the Missouri SIP and the CAA.

55.     These opacity violations are ongoing, and will continue unless and until they are abated by an order of the Court.

14

56.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

### THIRD CLAIM FOR RELIEF
**(Violation of Title V Permit Limits on Opacity at the Meramec Power Plant)**

57.     Plaintiff realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

58.     On thousands of occasions on or after March 5, 2009, Defendant emitted visible emissions from the coal-fired boilers and stacks of the Meramec power plant in excess of the opacity limitations contained in Part 70 Operating Permit No. OP2009-017, Condition PW003, or the comparable opacity limitations in the Meramec power plant's prior Title V / Part 70 operating permits.

59.     Each 6-minute period during which visible emissions from the Meramec power plant exceeded the opacity limitations contained in Permit No. OP2009-017 (or its predecessor permits) constitutes a separate and distinct violation of that permit and the CAA. 42 U.S.C. § 7661a(a).

60.     These opacity violations are ongoing, and will continue unless and until they are abated by an order of the Court.

61.     These opacity violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Opacity Limits in the Missouri SIP at the Meramec Power Plant)

62.     Plaintiff realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

63.     On thousands of occasions on or after March 5, 2009, Defendant emitted visible emissions from the coal-fired boilers and stacks of the Meramec power plant in excess of the opacity limitations contained in the Missouri SIP at 10 C.S.R. 10-6.220(3)(A)-(B).

64.     Each 6-minute period during which visible emissions from the Meramec power plant exceeded the applicable opacity limit in 10 C.S.R. 10-6.220(3)(A)-(B) constitutes a separate and distinct violation of the Missouri SIP and the CAA.

65.     These opacity violations are ongoing, and will continue unless and until they are abated by an order of the Court.

66.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

## FIFTH CLAIM FOR RELIEF
### (Violation of Title V Permit Limits on Opacity at the Rush Island Power Plant)

67.     Plaintiff realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

68.     On thousands of occasions on or after March 5, 2009, Defendant emitted visible emissions from the coal-fired boilers and stacks of the Rush Island power plant

16

in excess of the opacity limitations contained in Part 70 Operating Permit No. OP2010-047, Condition (EU001 and EU002)—002, or the comparable opacity limitations in the Rush Island power plant's prior Title V / Part 70 operating permits.

69. Each 6-minute period during which visible emissions from the Rush Island power plant exceeded the applicable opacity limitations contained in Defendant's Permit No. OP2010-047 (or its predecessor permits) constitutes a separate and distinct violation of that permit and the CAA. 42 U.S.C. § 7661a(a).

70. These opacity violations are ongoing, and will continue unless and until they are abated by an order of the Court.

71. These opacity violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

## SIXTH CLAIM FOR RELIEF
## (Violation of the Opacity Limits in the Missouri SIP at the Rush Island Power Plant)

72. Plaintiff realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

73. On thousands of occasions on or after March 5, 2009, Defendant emitted visible emissions from the coal-fired boilers and stacks of the Rush Island power plant in excess of the opacity limitations contained in the Missouri SIP at 10 C.S.R. 10-6.220(3)(A)-(B).

17

74. Each 6-minute period during which visible emissions from the Rush Island power plant exceeded the applicable opacity limit in 10 C.S.R. 10-6.220(3)(A)-(B) constitutes a separate and distinct violation of the Missouri SIP and the CAA.

75. These opacity violations are ongoing, and will continue unless and until they are abated by an order of the Court.

76. These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sierra Club respectfully prays for this Court to:

A. Declare that Defendant has violated the applicable opacity limits contained in its Title V / Part 70 operating permits on thousands of occasions since March 5, 2009;

B. Declare that Defendant has violated the applicable opacity limits contained in the Missouri SIP on thousands of occasions since March 5, 2009;

C. Enjoin Defendant from operating the Power Plants except in complete compliance with applicable opacity limits and requirements of its Title V / Part 70 Permits and the Missouri SIP;

D. Order Defendant to take such actions as may be necessary to comply with its applicable opacity limits, which may include the installation and operation of

18

appropriate pollution controls and/or the cessation of combustion of solid fuels in the affected boilers of Defendant's Power Plants;

F.     Order Defendant to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged above;

H.     Order Defendant to pay appropriate civil penalties in an amount to be determined at trial for each CAA violation that occurred on or after March 5, 2009, including a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2) that will reduce pollution in the immediate vicinity of the Power Plants, where Sierra Club's members work, live, and recreate and, therefore, improve the air quality that is harming Sierra Club's members;

I.     Order Defendant to pay Sierra Club's costs of litigation, including reasonable attorney fees, pursuant to 42 U.S.C. § 7604(d);

J.     Retain jurisdiction over this action to ensure compliance with the Court's Order; and

K.     Order any other relief that the Court finds is just and equitable.

19

Respectfully submitted this 5th Day of March, 2014.



Sunil Bector (CA 275127)*
SIERRA CLUB
85 Second Street, Second Floor
San Francisco, CA 94105
Tel: (415) 977-5759
Fax: (415) 977-5793
sunil.bector@sierraclub.org

James N. Saul (WI 1067236)*
MCGILLIVRAY WESTERBERG & BENDER LLC
211 S. Paterson Street, Ste 320
Madison, WI 53703
Tel: (608) 310-3560
Fax: (608) 310-3561
saul@mwbattorneys.com

*Attorneys for Plaintiff Sierra Club*
*(\*Applications for admission pro hac vice pending)*