UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-cv-00408-AGF |
| | ) | |
| UNION ELECTRIC COMPANY, | ) | |
| d/b/a AMEREN MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant's motion (Doc. No. 22) to dismiss Plaintiff's amended complaint for failure to state a claim and for lack of subject matter jurisdiction under the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 et seq., or alternatively, to strike the complaint's allegations regarding emissions of particulate matter ("PM"). For the reasons set forth below, Defendant's motion shall be denied.

# BACKGROUND

Plaintiff is a non-profit environmental organization with over 8,700 members in Missouri. Defendant is an electric company with three coal-fired power plants in Missouri, each operating with a permit issued under Title V of the CAA, 42 U.S.C. §§ 7661 et seq., and Missouri's state implementation plan ("SIP"), as approved by the Environmental Protection Agency ("EPA"). Plaintiff filed its amended complaint on March 17, 2014, under the CAA's "citizen suit" provision, 42 U.S.C. § 7604(a), after providing notice of its claims to Defendant, the state of Missouri, and the EPA

administrator. (Doc. No. 10 at 4.) Plaintiff alleges that Defendant's emissions exceeded the express limits on opacity set forth in Defendant's Title V permits and Missouri's SIP. Opacity refers to a plant's visible emissions, measured as a percentage of the amount of light being transmitted through a plume, and according to Plaintiff, opacity is a "general indicator of the amount of particulate matter ('PM') emitted from the source in question." (*Id.* at 7.) Plaintiff asserts that "opacity is used as a surrogate for the amount of PM in a plant's emissions" such that "[t]he higher the opacity percentage, the more PM emitted by the source." (*Id.* at 7, 11.)

Defendant's Title V permits and the Missouri SIP set forth a maximum opacity limit of 20%. (*Id.* at 7.) However, there are certain exceptions to the 20% limit, including an allowance of up to 40% opacity for one six-minute period per hour, and an exemption for excess opacity during certain start-up, shut down, and malfunction conditions. *See* Mo. Code Regs. Ann. tit. 10, § 10-6.220(3). Defendant is required to report each period of excess opacity on a quarterly basis to the Missouri Department of Natural Resources ("MDNR"). Plaintiff alleges that, according to Defendant's own reports, Defendant has violated the opacity limits on at least 7,880 separate occasions during the period March 5, 2009 through March 31, 2013, and that violations continue to occur.

Plaintiff alleges that these opacity violations harm the health, welfare, recreational, and aesthetic interests of its members who live, work, or recreate near Defendant's power plants. Specifically, Plaintiffs assert that its members "enjoy a number of recreational activities, including camping, boating, and wildlife observation, in the vicinity of, or

downwind from, one or more of [Defendant's] Power Plants[,] [and] [s]eeing the smoke from [Defendant's] Power Plants reduces these members' enjoyment of those recreational activities." (Doc. No. 10 at 13). Plaintiff also asserts that its members living, working, or recreating near Defendant's plants are exposed to increased air pollution as a result of Defendant's opacity violations, and that the "increase in exposure to PM increases the risk of acquiring respiratory or cardiac disease." *Id.* Plaintiff seeks declaratory and injunctive relief, as well as the imposition of civil penalties.

Defendant filed its motion to dismiss on May 15, 2014. Defendant argues that the amended complaint must be dismissed because its alleged violations of general opacity limits are not actionable. Defendant argues that opacity, unlike PM, is not itself a pollutant and is only a rough indicator of the amount of PM emitted by a plant. Defendant asserts that it is permitted to emit some amount of PM, up to a specific mass limit set forth by the EPA and MDNR,[1] and because Plaintiff has not alleged any violation of this mass limit, Plaintiff cannot state a claim for excess PM emissions.

Defendant argues that the only actionable opacity limits are source-specific opacity limits known as "PM Compliance Indicators" that are also set forth in each plant's operating permit. Defendant argues that, unlike the general opacity limits, these PM Compliance Indicators are plant-specific, boiler-specific opacity levels at or below which the EPA and MDNR have determined each boiler to be in compliance with the PM mass limit. In this case, the PM Compliance Indicators for Defendant's boilers are set at

---

[1] Mass limits are measured in terms of pounds of PM per one million British Thermal Units ("MMBtu"), and Defendant asserts that the mass limit applicable to its plants is 0.12 pounds per MMBtu for each boiler.

a higher percentage than the 20% general opacity limits.  Defendant argues that because Plaintiff does not allege any violation of the permits' higher PM Compliance Indicators, Plaintiff's complaint both fails to state a claim under the CAA and Missouri SIP, and also constitutes an impermissible collateral attack on the administrative permitting process, over which this Court lacks subject matter jurisdiction.

Further, Defendant states that even if a general opacity violation were actionable, an excess opacity reading cannot be deemed a violation unless the MDNR determines it to be unexcused, and Plaintiff has not alleged any such MDNR determination here.

Next, Defendant argues that the lack of a causal connection between general opacity limits and PM emissions also prevents Plaintiff from demonstrating standing. Defendant contends that the primary harm alleged by Plaintiff relates to exposure to excess PM emissions, and for the reasons discussed above, such harm is not traceable to Defendant's alleged violations of opacity limits.  Defendant also argues that Plaintiff's remaining allegations of injury to unspecified members' recreational and aesthetic interests are too vague and speculative to demonstrate standing.

Alternatively, Defendant argues that Plaintiff's allegations regarding any injuries resulting from PM emissions should be stricken as immaterial to the violations alleged, leaving only Plaintiff's allegations regarding general opacity violations, which according to Defendant, fail to state a claim.

Plaintiff responds that Defendant's operating permits contain not only PM Compliance Indicators, but also express numeric opacity limits, which are enforceable in their own right.  Plaintiff argues that it is not attempting to collaterally attack the

permitting decision or the permit terms, but is instead attempting to enforce the express opacity limits contained in the permits as written.  Plaintiff disputes Defendant's assertion that an excess opacity reading cannot be a violation of the opacity limits unless the MDNR declares it as such.  Plaintiff argues that the regulation cited by Defendant in support of this assertion merely provides a procedure for the MDNR to determine whether to bring its own enforcement action, but does not preclude citizens from filing private suits to enforce violations of the express numeric opacity limits.

Moreover, Plaintiff argues that its complaint sufficiently alleges standing in that it asserts injury traceable to Defendant's conduct.  Plaintiff argues that the opacity limits Defendant violated are an independent limitation on particulate air pollution and a "surrogate" for PM emissions.  Thus, Plaintiff alleges that Defendant's violations of the opacity limits demonstrate excess emissions of PM and other pollutants, and are causally connected to greater exposure to air pollution and reduced enjoyment of recreational activities for Plaintiff's members living, working, or recreating near Defendant's plants.

Finally, Plaintiff argues that because its allegations regarding exposure-related injuries are material to its claim for violation of the opacity limits, Defendant's alternative motion to strike should also be denied.

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The reviewing court must accept the

plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

"[T]o properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge to jurisdiction, as in a Rule 12(b)(6) motion, the plaintiff's allegations "are presumed to be true, and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* In a factual challenge, the court must evaluate any factual dispute and determine whether the plaintiff has satisfied its burden to prove that jurisdiction exists. *Id.* at n.1.

Additionally, under Rule 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

**<u>Failure to State a Claim and Lack of Subject Matter Jurisdiction</u>**

As an initial matter, the Court rejects Defendant's contention that the Court lacks subject matter jurisdiction because Plaintiff's amended complaint constitutes an impermissible collateral attack on the administrative permitting process. The CAA's "citizen suit" provision authorizes private civil actions against "any person . . . who is

alleged to have violated . . . or to be in violation of [] an emission standard or limitation[.]" 42 U.S.C. § 7604(a). The term "emission standard or limitation" is defined to include "any [] standard, limitation, or schedule established . . . under any applicable State implementation plan approved by the Administrator." *Id.* § 7604(f)(4). The provision also authorizes private suits against "any person . . . who is alleged to have violated . . . or to be in violation of any condition of [a CAA] permit." *Id.* § 7604(a).

Defendant does not dispute that the 20% general opacity limit is an express condition of its Title V permits and the Missouri SIP. Plaintiff does not attack the terms of the opacity limit or any other permit conditions, including PM mass limits or PM Compliance Indicators. Plaintiff merely seeks to enforce the opacity limit independently and on its express terms, as the CAA permits. The Court thus finds it has subject matter jurisdiction to hear Plaintiff's claim. *Cf. Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1013 (8th Cir. 2010) (holding that where Sierra Club "essentially attack[ed] the terms of [defendant's] amended Title V permit rather than [defendant's] compliance with the permit," district court lacked subject matter jurisdiction because the CAA vests judicial review of administrative permitting process exclusively in the courts of appeal).

The federal courts have repeatedly recognized an independent cause of action for violation of general opacity limits under Title V permits and/or state SIPs, regardless of whether a plaintiff also asserts a claim for violation of any related limits on emissions. *See, e.g., Sierra Club v. TVA*, 430 F.3d 1337, 1349 (11th Cir. 2005) ("*TVA*") (recognizing standalone claim under CAA for violation of Alabama SIP's 20% general opacity limit without any discussion of additional violations of mass limits or more specific opacity

limits); *Sierra Club v. Energy Future Holdings Corp.* ("*Luminant*"), 921 F. Supp. 2d 674, 681 (W.D. Tex. 2013) (allowing claim for violation of general opacity limit set forth in Title V permit and Texas SIP and also finding nearly identical collateral attack argument to be "without merit" because "[s]ection 304 of the Clean Air Act expressly authorizes citizen plaintiffs to bring suit for violations of any emission standards or limitations under a Title V permit *or* any State implementation plan," and the general opacity limits plaintiff sought to enforce were expressly set forth in both the permits and SIP at issue) (emphasis in original); *Sierra Club v. DTE Energy Co.* ("*DTE Energy*"), No. 13-cv-11103, 2013 WL 6910431, at 3-4 (E.D. Mich. Oct. 7, 2013) (allowing claim for violation of general opacity limit set forth in Title V permit and Michigan SIP), *adopted by* 2014 WL 29127 (E.D. Mich. Jan. 3, 2014); *Sierra Club v. Energy Future Holdings, Corp.*, No. 5:10cv156, 2013 WL 5354414, at *7-8 (E.D. Tex. Sept. 24, 2013) (allowing claim for violation of general opacity limit set forth in Title V permit and Texas SIP).

  Defendant asserts that these cases are inapposite because in these cases, the permits at issue did not contain separate PM Compliance Indicators, or contained PM Compliance Indicators set at or below the general limit, such that a violation of the general opacity limit would also prove a violation of the PM Compliance Indicator limit. The Court finds this distinction to be without merit. The cases cited above recognize an independent claim for violation of express general opacity limits under the plain language of the CAA citizen suit provision, regardless of a defendant's compliance, or lack thereof,

with any other limit on emissions.[2] Defendant cites no authority for the proposition that the general opacity limits are not enforceable as an independent condition of the Title V permits and the Missouri SIP merely because the permits also contain boiler-specific PM Compliance Indicator limits.

Federal courts interpreting the CAA have recognized that, as Plaintiff contends, "[b]ecause opacity sometimes is easier to measure than particulates, it is commonly used for indirectly monitoring and limiting the amount of particulates in emissions." *Bethlehem Steel Corp. v. EPA*, 782 F.2d 645, 648 (7th Cir. 1986) (also noting that opacity "is a proxy for particulate emissions[.]"); *Util. Air Regulatory Group v. EPA*, 744 F.3d 741, 744 (D.C. Cir. 2014) ("To provide an alternative (and less expensive) way to assess compliance [with emissions limits], EPA later added opacity standards to its boiler rules. Opacity is not a pollutant but rather can serve as a proxy for pollutants.") (internal citations omitted); *TVA*, 430 F.3d at 1341 (noting that although "[o]pacity is not a

---

[2] For example, Defendant asserts that the Western District of Texas *Luminant* case is distinguishable because it "expressly notes" that the defendant's "plant had been assigned PM Compliance Indicator opacity limits (20%) that were *below* the applicable general opacity standard in Texas (30%)." *See* Doc. No. 30 at 8 (emphasis in original). But *Luminant* contains no such language. Rather, the Title V permit in *Luminant* simply contained a "more stringent" general opacity limit than that set forth under the Texas SIP (20% rather than 30%). *Luminant*, 921 F. Supp. 2d at 681. Moreover, the court held that this fact was "irrelevant . . . because the Sierra Club has standing to enforce the Texas SIP standards separate and apart from the Title V permit." *Id.* There is no suggestion that the permit at issue in *Luminant* contained both a general opacity limit and also a separate, more specific opacity limit, as Defendant contends here, or that the presence of both types of limits would somehow foreclose the enforceability of the former. If anything, *Luminant* undercuts Defendant's position because it confirms that even if the Title V permits did not contain an enforceable general opacity limit, Plaintiff could still independently enforce the state SIP's general opacity limit. Because in this case, both the Title V permits and the state SIP contain the same general opacity limit, Plaintiff is entitled to enforce both under the plain language of the CAA's citizen suit provision.

pollutant," it "is important in the Clean Air Act regulatory scheme as an indicator of the amount of visible particulate pollution being discharged by a source.").

The Court therefore finds that the express general opacity limit set forth in Defendant's Title V permits and the Missouri SIP is independently enforceable under the plain language of the CAA.

In its motion to dismiss, Defendant attempts to argue facts outside of the pleadings by asserting that, notwithstanding any violation of general opacity limits, the amount of PM emitted from Defendant's plants was consistently below the legal limit. *See, e.g.,* Doc. No. 23 at 6 n.2. Defendant also argues that its alleged violations of general opacity limits are excusable because they were associated with exempted "start-up, shut down or maintenance" activities. *Id.* But whether Defendant's opacity violations did not result in an unlawful amount of PM emissions, or are otherwise excusable under the CAA and Missouri SIP, is a matter that requires further development of the record. *See Luminant*, No. 12-cv-108, 2014 WL 2153913, at *8, *12-14 (W.D. Tex. March 28, 2014) (holding only after full trial on merits that although plaintiff stated claim for violation of general opacity limits in Title V permits and Texas SIP, defendants met their burden of proving affirmative defenses to excuse the violations and were able to prove by expert testimony that "the reported opacity events . . . did not result in particulate matter ('PM') concentrations sufficient to cause or contribute to a violation of the . . . . National Ambient Air Quality Standards ('NAAQS') for PM"). At the pleading stage, Plaintiff's allegations that Defendant violated an express condition under its Title V permits and the Missouri SIP are sufficient to state a claim under the CAA.

**Standing**

An association like Plaintiff "has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citation omitted). An individual member would have standing if he "(1) . . . suffered an "injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 180-81 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).)

Defendant's challenge to Plaintiff's standing is twofold: first, that any increase in Plaintiff's members' exposure to PM is not traceable to a violation of general opacity limits, and second, that Plaintiff's allegations of harm are not sufficiently specific because, for example, Plaintiff does not identify the particular members who were injured.

Regarding the first challenge, the Court notes that Plaintiff's allegations of harm are not limited to increased exposure to PM emissions. Plaintiff also asserts harm to its members' recreational and aesthetic interests from the opacity of the smoke plumes itself, and this harm constitutes an independent injury in fact. *See TVA*, 430 F.3d at 1344-45 (holding that allegations that members "regularly saw plumes of smoke," which

interfered with their recreational and aesthetic interests, were sufficient to demonstrate these members' individual standing). Although Defendant asserts that "[n]o right exists to a 'plume free' view of an operating power plant" (Doc. No. 23 at 13), Defendant does not dispute that there are legal limits to the opacity of such plumes. And when a violation of such limits results in a plaintiff's decreased enjoyment of recreational activities, the plaintiff may bring suit to redress that injury. *See id.*; *Sierra Club v. Johnson*, 436 F.3d 1269, 1279 (11th Cir. 2006) ("[E]nvironmental plaintiffs adequately allege injury in fact when they aver they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity.") (quoting *Friends of the Earth*, 528 U.S. at 183.)

Moreover, as discussed above, Plaintiff alleges that opacity is a surrogate for, and an independent measure of, PM emissions. As such, the Court finds that Plaintiff's allegations of increased exposure to PM emissions are traceable to Defendant's alleged violations of opacity limits. *See, e.g., DTE Energy Co.*, No. 13-cv-11103, 2013 WL 6910431, at *3-4 (rejecting defendant's challenge that exposure-related injuries are not "fairly traceable to the alleged violation of opacity limits" and finding that plaintiff's allegations that "opacity is used as a surrogate for [PM] emissions" and that the "health, welfare and aesthetic and recreational interests" of plaintiff's members were harmed by increased exposure to air pollution were sufficient to support standing at the pleading stage); *Energy Future Holdings, Corp.*, No. 5:10cv156, 2013 WL 5354414, at *8 (rejecting defendant's argument that harm related to emissions of pollutants is not causally connected to opacity violations and finding plaintiff's allegations that "opacity is

an indicator of the excessive levels of particulate matter ('PM') pollution," and that plaintiff's members suffered harm from exposure to such pollution, sufficient to plead standing).

The Court also rejects Defendant's challenge to the specificity of Plaintiff's standing allegations. The degree of evidence required to prove standing at successive stages of litigation is the same as "any other matter on which a plaintiff bears the burden of proof." *Const. Party v. Nelson*, 639 F.3d 417, 420 (8th Cir. 2011) (citing *Lujan*, 504 U.S. at 561). "Therefore general factual allegations of injury resulting from the defendant's conduct will suffice to establish Article III standing at the pleading stage, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support a contested claim." *Id.* at 420-21; *see also Luminant*, 921 F. Supp. 2d at 681 ("Plaintiff is not required to 'name names'" when alleging its members suffered injury in fact for purposes of pleading standing). Plaintiff's factual allegations that its members who live, work, or recreate near Defendant's plants suffered injury traceable to Defendant's conduct are sufficient to survive the pleading stage. The Court finds thus that Plaintiff has adequately alleged that its individual members would have standing.

With respect to the remaining elements of the association's standing, the Court finds, and Defendant does not contest, that Plaintiff's organizational purpose to protect the environment is closely related to the interests at stake, and there is no reason why the claims or relief requested by Plaintiff require the participation of individual members.

Therefore, Plaintiff has sufficiently pleaded standing to bring suit on behalf of its members.

**Motion to Strike**

Because the Court finds that Plaintiff's allegations of PM emissions and related injuries are relevant to Plaintiff's claims for violation of the opacity limits, and not "redundant, immaterial, impertinent, or scandalous," the Court also denies Defendant's motion to strike. *See* Fed. R. Civ. P. 12(f).

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss and to strike is **DENIED**. (Doc. No. 22.)

```
                                     _____
                                     AUDREY G. FLEISSIG
                                     UNITED STATES DISTRICT JUDGE
```

Dated this 6th day of November, 2014.