UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SIERRA CLUB, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) ) ) No. 14-cv-00408-AGF |
| UNION ELECTRIC COMPANY d/b/a AMEREN MISSOURI, | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM IN SUPPORT OF AMEREN'S MOTION TO COMPEL
DISCOVERY FROM SIERRA CLUB**

September 11, 2015

Renee Cipriano (*pro hac vice*)
Linda K. Stevens (*pro hac vice*)
Molly L. Wiltshire (*pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
Ph:  312.258.5500/F: 312.258.5600
rcipriano@schiffhardin.com
lstevens@schiffhardin.com
mwiltshire@schiffhardin.com

Sarah D. Youngblood (*pro hac vice*)
SCHIFF HARDIN LLP
One Market, Spear Street Tower
Suite 3200
San Francisco, CA 94105
Ph:  415.901-8700/ F:  415.901.8701
syoungblood@schiffhardin.com

Daniel C. Nelson (40518MO)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
Ph:  314.552.6650/ F:  314.612.2273
dnelson@armstrongteasdale.com

Attorneys for Defendant Union Electric
Company d/b/a Ameren Missouri

# INTRODUCTION

Sierra Club's discovery responses have been woefully inadequate and slow. Indeed, Sierra Club produced its first internal document just within the last week. Of most immediate concern, Sierra Club has refused to produce certain categories of documents critical to Ameren's defense in this matter. Ameren's Motion to Compel lists the specific discovery requests at issue, which fall into three categories:

1. Identification of the Sierra Club members that it asserts have been negatively impacted by the alleged violations and information about those members and their injuries;
2. Communications between Sierra Club and its members regarding emissions from the Ameren facilities at issue and/or this lawsuit; and
3. Documents relating to the motivation and rationale for this lawsuit, including those regarding "Beyond Coal," Sierra Club's campaign to force coal-fired power plants to cease operations, regardless of Clean Air Act compliance.

As shown below, this information is relevant to the claims and defenses in this matter, and Sierra Club should be compelled to provide it.

# BACKGROUND

**I.    Nature of the Case**

A description of the nature of this case, and the issues pertinent to Sierra Club's claims and Ameren's defenses, is helpful to understand the current discovery dispute.

**A.    This Is A Case About Opacity, Not Pollutants.**  This case is not about exceeding pollution limits. Rather, this case is about the "opacity" of air emissions – what they look like and, specifically, the degree to which light cannot pass through them. Opacity is not a pollutant, and the presence of opacity in a facility's emissions does not mean that those emissions contain excess particular matter ("PM") pollution. Rather, opacity is monitored, and certain opacity levels are designated as "trigger points," for action to be taken *in order to avoid* excess PM emissions. Those triggering opacity levels are set conservatively, with a wide

1

cushion, so that there is time and opportunity to receive the alarm, take responsive action, and allow that action to have an effect – all *without exceeding the PM limit*. Sierra Club has made no allegation in this case that any of the three Ameren plants at issue exceeded the PM emissions limit.[1] Nor is this case about any physical harm. Sierra Club has stated that it will not present any evidence of physical harm and instead will focus on unidentified "recreational" or "aesthetic" harm. So, this is a case about opacity only – the appearance of emissions –and the as-yet-unidentified aesthetic or recreational harm that Sierra Club will seek to prove its members have suffered.

B.     **Ameren's Relatively Few Excess Opacity Emissions Are Not "Violations."**

Missouri has established 20% as the general opacity standard for the St. Louis area. However, not all opacity in excess of 20% is a "violation."  Rather, exceeding the 20% standard has two consequences: (1) reports must be submitted (together with certain additional information depending on duration) to the Missouri Department of Natural Resources (MDNR), and (2) MDNR then reviews the reports and information and determines whether further information and/or enforcement action is warranted. 10 CSR §10-6.020(4)(A); §10-6.050(3)(A); §10-6.050(3)(B); §10-6.050(C). That determination is guided by a list of factors, e.g., whether the exceedance was the result of safety, technological, or operating constraints of the equipment (sometimes turning pollution control equipment off is necessary for safety, maintenance, testing, etc.); whether equipment was well operated and maintained; and the steps taken to minimize and respond to the exceedance. *Id*.

Ameren has had very few excess opacity emissions. Although Sierra Club refers to the alleged exceedances in terms of minutes (47,280 minutes) (Am. Compl. ¶40), those minutes are a

---

[1] Nor could it make such an allegation; Ameren has complied with the PM emission limit.

2

tiny fraction of the 10 units' total operating time.[2] In reality, emissions from the Ameren facilities at issue are below the general opacity standard *more than 99% of the time*. Moreover, and more importantly, Ameren reported its excess emission and cause information to MDNR as required by law. MDNR took no enforcement action. Sierra Club's labeling of Ameren's relatively few excess emissions as "violations" is therefore conclusory and inaccurate. 10 CSR § 10-6.220(3)(C) (excess emissions "are in violation of this rule unless the director determines that the excess emissions do not warrant enforcement action…").

        **C.**      **Sierra Club's True Agenda.**  Sierra Club's true motivation for pursuing this suit is neither excess PM emissions (Sierra Club alleges no violation of the PM limit), nor any of the dire physical harm alleged to result from PM emissions (Sierra Club has advised the Court that it will not seek to present any evidence of physical harm). Nor will the evidence show that this case is about some claimed aesthetic or recreational injury caused by the appearance of emissions. Stripping away the hyperbole from Sierra Club's Complaint lays bare the actual purpose of this litigation: it is part of Sierra Club's "Beyond Coal" campaign – an effort to shutter all coal-fired power generation facilities, regardless of their Clean Air Act compliance, in favor of generation resources deemed more palatable to Sierra Club.

## II.    Status of Discovery

Sierra Club has demanded, and Ameren has produced, volumes of data and documents relating to the operations of the ten power-generation units at issue. Each unit tracks, monitors and captures operational data in real time for the purpose of reacting quickly to operational conditions. Each plant also has a complex system of pollution controls and equipment to monitor

---

[2] The 3 plants have, together, 10 "units" (a unit consists of a coal-fired boiler and related power-generation and monitoring equipment), and Sierra Club's claims encompass 5 years of operation for each unit, totaling roughly 50 years' worth of total operating time.

3

emissions. All of this equipment has an associated universe of maintenance, operation and performance data. Ameren has invested substantial time, effort and money to provide pertinent documentation and data responsive to Sierra Club's requests in as timely a fashion as possible. Ameren's first production was made on May 12, 2015, and Ameren continued to produce data and documents, on a rolling basis, with its last production on September 4, 2015. To date, Ameren has produced over 24 gigabytes of material in response to Sierra Club's requests.

In contrast, as of last week, Sierra Club had produced none of its own internal documentation. No emails; no correspondence; no memoranda; no analyses. Instead, Sierra Club sent Ameren certain publicly available information, apparently copying and re-producing files that it had obtained from MDNR in response to public records requests (mostly documentation that Ameren itself had submitted to MDNR) and thereby producing only documents that Ameren already had. After repeated entreaties from Ameren, Sierra Club finally made a small production (under 400 pages, consisting of only 37 documents) this past Friday, September 4, 2015, and has stated that it will continue to produce documents, on a rolling basis, through the month of September. The parties recently requested a revised discovery schedule from the Court, in light of the substantial delay in getting Sierra Club's documents.

While there may be additional disputes regarding Sierra Club's compliance, the parties have reached an impasse regarding Sierra Club's withholding of the three categories of information listed in the introduction above. Pursuant to Fed.R.Civ.P. 37(d)(1)(B) and E.D.Mo. L.R. 3.04(A), Ameren and its undersigned counsel certify that it has in good faith conferred with Sierra Club, through multiple letters and telephone conversations between counsel, in an attempt to resolve their disagreement regarding these disputes, but those efforts have been unsuccessful.

# ARGUMENT

I. **The Legal Standard**

Parties may obtain discovery regarding any non-privileged matter relevant to a claim or defense, whether or not admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). Rule 26 is liberally construed to allow discovery on any matter that reasonably could bear on any issue that may be involved in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). That Sierra Club may deem the information irrelevant does not shield it from discovery. Ameren "is entitled to conduct discovery to develop facts to develop [their] defenses regardless of whether [Plaintiff] consider[s] the facts important to [its] theory of the case." *U.S. ex rel. Minge v. TECT Aerospace, Inc.*, 2011 WL 1885934, at *2 (D. Kan. May 18, 2011). After the moving party makes a threshold showing of relevance under this liberal standard, the opposing party "has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Ritz v. Directory Pub. Solutions, Inc.*, 2014 WL 1922957 at *1 (E.D.Mo. May 14, 2014), citing *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, 2010 WL 2990118 at *1 (E.D.Mo., July 27, 2010).

II. **The Issues As to Which the Requested Materials Are Relevant**

The materials that Sierra Club is attempting to shield from discovery are relevant to at least four distinct, independent sets of legal issues in this case:

A. **Standing**. Sierra Club has standing only if one or more members would have standing to sue in their own right. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Sierra Club relies on the alleged standing of several members identified in its interrogatory responses (the "Identified Members"). Those Identified Members have standing only if they have (i) suffered an injury in fact to a legally protected interest, which injury is (ii)

5

fairly traceable to Ameren's allegedly unlawful conduct and (iii) likely to be redressed by a favorable ruling. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

  **B.** **Causation on the Merits**. "[T]o prevail on the merits" of its claims, Sierra Club "must ultimately establish causation." *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 793 (5th Cir. 2000). This requires proof of a causal link between its members' alleged injuries and the violations alleged in the Complaint. *See id.*

  **C.** **Factors Relevant to the Request for a Penalty**. The Complaint seeks a civil penalty. (Am. Compl., ¶1.) The Clean Air Act enumerates seven factors that a court is "obligated to evaluate" when determining whether to impose a civil penalty and, if so, the amount. *See U.S. v. Anthony Dell'Aquila*, *Enter. & Subsidiaries,* 150 F.3d 329, 339 (3d Cir. 1998). One of those factors is "the seriousness of the violation." 42 U.S.C. § 7413(e)(1). A court also has broad discretion to consider "such other factors as justice may require." *Id.*

  **D.** **Factors Relevant to Injunctive Relief**. The Complaint also seeks a permanent injunction. (Am. Compl., ¶1.) Traditional equitable principles govern the availability of injunctive relief under the Clean Air Act. *Sierra Club v. Tenn. Valley Auth.*, 592 F. Supp. 2d 1357, 1373–74 (N.D. Ala. 2009). Thus, to obtain an injunction, Sierra Club must prove: (1) irreparable injury; (2) no adequate remedy at law; (3) the balance of hardships favors Sierra Club; and (4) an injunction would not disserve the public interest. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010).

**III.** **The Requested Materials Must Be Provided**

  **A.** **Member Identification and Communications Must Be Produced**. Sierra Club has refused to produce (i) identification of its members asserted in its Complaint to be negatively impacted by emissions from the Ameren facilities as well as (ii) communications between Sierra

6

Club and broader membership regarding emissions from the Ameren facilities at issue and/or this lawsuit. This refusal cannot stand.

      **1.**      <u>This information is directly relevant to the claims and defenses at issue</u>.

Sierra Club's Complaint explicitly asserts that Sierra Club members who "live, work, and recreate in and around the cities of Labadie, St. Louis, and Festus, Missouri, as well as other areas near and downwind from the Power Plants" are "negatively affected by air pollution emissions from the Power Plants" and that "the health, welfare, and aesthetic and recreational interests of these members have been and continue to be harmed by that air pollution." (Am. Compl. ¶45.) Although Sierra Club has backed away from its assertions of physical harm,[3] its Complaint asserts that its "members also enjoy a number of recreational activities, including camping, boating, and wildlife observation, in the vicinity of, or downwind from, one or more of Ameren's Power Plants" and that "[s]eeing the smoke plumes from Ameren's Power Plants reduces these members' enjoyment of those recreational activities." (*Id.* at ¶47.) And Sierra Club bases its demand for a civil penalty and injunction on this broad claim of injury to its members who live, work and recreate near the facilities at issue.

In an effort to ascertain the factual and evidentiary bases for these allegations and claims, and to develop its defense (e.g., how many members actually do "live, work and recreate" near each facility at issue? How many and which members feel they have been impacted by emissions from Ameren's facilities? How many and which members do not?), Ameren served discovery requests seeking identification of the Sierra Club members who live within 5 miles of one of the

---

[3] As Sierra Club stated during the February 27, 2015 Rule 16 Conference, it will not seek to present evidence of physical harm. This is not surprising since, as discussed above, opacity is not pollution but rather is used as a monitoring device to trigger corrective action *before* excess PM emissions occur. The evidence will show that Ameren properly – and successfully – used its opacity monitoring equipment and procedures exactly as intended and required by law. This is confirmed by Sierra Club's failure to allege a single PM violation.

7

facilities at issue; information about their membership, their claimed injuries, the traceability of those injuries to Ameren emissions, and the redressability of those injuries; and production of Sierra Club's communications with its members regarding emissions from the Ameren facilities at issue. (Doc. Req. Nos. 14, 15.)

Sierra Club cannot credibly deny that this information is directly relevant to the issues in this case. Indeed, it is information that *Sierra Club itself has put at issue*. As a general matter, a party is entitled to discovery on any issue raised by the pleadings. *See Oppenheimer Fund*, 437 U.S. at 351. Sierra Club made a deliberate choice to file a complaint that purports to describe dire conditions in the area around the plans and invokes the specter of widespread injury to the members who live, work or recreate there. Having placed these members' identities, locations, and experiences at issue, Sierra Club cannot now refuse the requested discovery.

Moreover, the withheld information is directly relevant to each of the four key legal issues in this case. First, it might undercut the testimony of the few members that Sierra Club has chosen to testify regarding conditions near the plant and their alleged injuries. Second, it will allow Ameren to test Sierra Club's assertions that Ameren's facilities have an impact on Sierra Club's members and thereby test and defend against Sierra Club's claim of causation. Third, not being able to discover the impact, if any, of the facilities' operations on members who live nearby impedes Ameren's ability to defend against the civil penalty claim, because "the seriousness of the [alleged] violation" is one of the factors this Court must consider when deciding whether to assess a penalty. *See* 42 U.S.C. § 7413(e)(1). Finally, the withheld information also speaks to the injunction factors, including balance of hardships and public interest. Sierra Club's refusal to produce this information therefore impedes Ameren's ability to

defend itself. *See Jones v. Hawley*, 255 F.R.D. 51, 52 (D.D.C. 2009) ("[A] fundamental purpose of discovery is to secure information that will impeach or contradict an opponent's case.").

### 2. The First Amendment does not shield this information from discovery.

Sierra Club does not seriously dispute the relevance of the information sought by this discovery. Instead, Sierra Club has refused to fully comply with these discovery requests, arguing instead that it should be allowed to take a selective approach and produce only some documents (to be determined by Sierra Club) regarding only those members who have agreed to act as witnesses for Sierra Club, but withhold a full set of communications with and documents regarding the Identified Members and withhold as well the identification of, and communications with, the *other* Sierra Club members who "live, work and recreate" near the facilities at issue whom Sierra Club alleges have been injured. Sierra Club also has refused to produce communications with its members about emissions from the facilities or about this case. Sierra Club claims that this information is shielded from discovery by an "associational privilege" under the First Amendment. This selective parsing of relevant evidence is improper, and the First Amendment does not apply.[4]

First, the First Amendment privilege against compelled disclosure of information about an organization's members "is qualified, not absolute," and "cannot be used as a blanket bar to discovery." *Wilkinson v. FBI*, 111 F.R.D. 432, 436 (C.D. Cal. 1986). To invoke the privilege, Sierra Club "must make a prima facie showing that the privilege applies" by "demonstrat[ing] an objectively reasonable probability that compelled disclosure will chill associational rights." *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1153 (D. Kan. 2010); *accord*

---

[4] Ameren's attempt to obtain at least some of the withheld information from the Identified Members via subpoena has also been blocked by Sierra Club, whose attorneys also represent the Identified Members and have raised the same objections, which Ameren hopes will be resolved without additional motion practice after disposition of the present motion.

9

*U.S. v. Comley*, 890 F.2d 539, 544 (1st Cir. 1989); *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 33, 60–61 (D.D.C. 2008), *aff'd*, 582 F.3d 1 (D.C. Cir. 2009). This requires the organization to make a specific factual showing that disclosure will deter membership due to fears of threats, harassment, or reprisal. *See Ala. State Fed'n of Teachers, AFL-CIO v. James*, 656 F.2d 193, 197 (5th Cir. 1981); *In re Grand Jury Proceedings*, 776 F.2d 1099, 1103–04 (2d Cir. 1985); *In re Motor Fuel Temp.*, 707 F. Supp. 2d at 1153.

It would be facially implausible for Sierra Club to argue that requiring Sierra Club to identify a subset of its Missouri members would somehow produce a chilling effect on its members' right to free association. There is no evidence that Sierra Club is a persecuted group or that its members have ever been harmed, attacked, threatened, harassed, or threatened with job loss because of their membership in Sierra Club.[5] The First Amendment's limited and qualified privilege simply "cannot be used to circumvent general and legitimate discovery where the specter of intimidation and reprisal is not present." *Sherwin-Williams Co. v. Spitzer*, 2005 WL 2128938, at *5 (N.D.N.Y. Aug. 24, 2005).

Second, even if Sierra Club could make out a prima facie showing of First Amendment associational privilege (which it cannot), Sierra Club still would not be entitled to evade Ameren's discovery, due to this Court's Protective Order.

---

[5] Sierra Club's objections may be fueled by a desire to make sure its members cannot be contacted or interviewed – an improper use of the First Amendment. A litigant must identify people with relevant knowledge, if asked – *particularly where that litigant's pleading puts those peoples' experiences and knowledge at issue.* Ameren has found no case treating interviews of people alleged to have relevant knowledge as "harassment" for First Amendment purposes. Even government interviews simply are not harassment. *See NAACP v. Brackett*, 130 F.App'x. 648, 652 (4th Cir. 2005) (despite possible past harassment, police interviews of members are not harassment such as would violate an associational right); *Jones v. Unknown Agents of Federal Election Comm'n*, 613 F.2d 864, 877 (D.C. Cir. 1979) (same for election commission interviews). In any event, the identities and addresses of the members who live near the plants are relevant even if Ameren decides not to interview a single one, e.g., for analysis of sightlines and air flow patterns relevant to the allegations of harm and to the "seriousness" of that harm.

10

> [T]he First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect on a party's First Amendment rights. As the Supreme Court made clear in *Herbert*, the answer is not to suppress such evidence, but rather to exercise judicial discretion by *providing protection short of suppression*.

*United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473 (M.D.N.C. 2003) (emphasis added, citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)) *aff'd*, 2012 WL 1565228 (MD.N.C. Apr. 30, 2012); *see also Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980) (court should use "all available alternatives" to "tailor further discovery consistent with constitutional limitations"); *See also De La Paz v. Henry's Diner, Inc.*, 946 F. Supp. 484, 485 (N.D. Tex. 1996) ("Given that 'privileges are strongly disfavored in federal practice,' this Court is bound to interpret federal common law privileges"—including First Amendment-based privileges—"narrowly") (brackets omitted, quoting *A.C.L.U. of Miss. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981)). Such "protection short of suppression" is readily available under this Court's Protective Order. That order allows Sierra Club to designate sensitive discovery material for "Confidential" treatment and prohibits disclosure or use of such materials outside of this litigation, *see* Protective Order (Dkt. 54, ¶¶3, 5, 9), thereby eliminating any risk that providing the requested discovery would chill Sierra Club's members' rights to free association.

Courts have repeatedly recognized that protected, confidential disclosure is a preferred alternative to complete suppression of discovery. *See Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) ("In the absence of evidence that the court's [] protective order will be [] ineffectual . . . , the risk of public disclosure is minimal, and the threat to [F]irst [A]mendment rights is inconsequential."); *accord Int'l Union et al. v. Nat'l Right to Work Legal Def. & Educ. Found., Inc.*, 590 F.2d 1139, 1153 n.19 (D.C. Cir. 1978); *Nat'l Org. for Women, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 275 (D. Conn. 1980). Confidential

11

disclosure under a protective order is especially appropriate where, as here, the requesting party seeks to discover not the entirety of an organization's membership, but only the names of members who (i) live, work, and/or recreate within a short (5-mile) radius around the facilities at issue and/or (ii) have communicated with Sierra Club specifically about emissions from the facilities at issue or this lawsuit. *See Savola v. Webster,* 644 F.2d 743, 747 (8th Cir. 1981); *Sperry Rand Corp.*, 88 F.R.D. at 275.

   **B.**  **The Requested "Beyond Coal" Materials Also Must Be Produced.**  The parties also dispute whether documents regarding Sierra Club's "Beyond Coal" campaign are subject to discovery. Sierra Club made public statements acknowledging that the goal of its "Beyond Coal" campaign is to shut down coal-fired electricity generation facilities – regardless of their compliance with state and federal law – in favor of Sierra Club's preferred "renewable" energy sources, like solar and wind.[6] This campaign is funded and enabled by a litigation war chest containing tens of millions of dollars donated by a wealthy environmental philanthropist.[7]

  That the current litigation is part of and motivated by the "Beyond Coal" campaign's mission to shutter all of the nation's coal-fired power generation facilities cannot be disputed. Sierra Club posted a press release regarding this lawsuit describing it as a means to force Ameren to "phase out" coal-fired generation in favor of "clean energy."[8] As Sierra Club made clear in its

---

[6] These statements were later altered or removed from Sierra Club's website after its receipt of Ameren's discovery requests seeking documents and information regarding these statements.

[7] Mike Bloomberg, *Beyond Coal Campaign*, MIKEBLOOMBERG.COM (April 8, 2015) http://www.mikebloomberg.com/index.cfm?objectid=48e2bff7-c29c-7ca2-f304e8e390f76209 ("Bloomberg Philanthropies invests an additional $30 in the Sierra Club's Beyond Coal Campaign to help secure the retirement of half of the U.S. coal fleet by 2017").

[8] Press Release, Sierra Club, Legal Action Against Ameren Moves Forward After Company Violates the Clean Air Act Nearly 8,000 Times at St. Louis-Area Coal Plants (Mar. 5, 2014) (available at http://content.sierraclub.org/press-releases/2014/03/legal-action-against-ameren-moves-forward-after-company-violates-clean-air).

Complaint, its driving litigation principle is that "no level of PM" is acceptable (regardless of federal and state law saying otherwise), and it seeks the closure of the facilities at issue, even if their emissions are within legal limits. (Am. Compl., ¶48, complaining about emissions "regardless of whether any regulatory standard or limitation on PM pollution is exceeded.")[9]

Given the connection between Sierra Club's goal of closing coal-fired electricity generation facilities – even if they are in compliance with PM emission laws – and this suit against Ameren, Ameren served discovery requests seeking information regarding its "Beyond Coal" campaign. (Doc. Request Nos. 38-46.) Sierra Club has refused to produce those documents, claiming the requests are "overly broad, unduly burdensome, harassing and oppressive, seek irrelevant information, and because they "violate[] the constitutional freedoms of Sierra Club and its members provided by the First Amendment." (Mot. to Compel, Exh. E.)

Sierra Club's objections are baseless. First, the requested documents relate directly to a number of issues important to this case. For example, Ameren seeks discovery exploring the connections between this lawsuit and Sierra Club's anti-coal political agenda, including its Beyond Coal campaign, in order to explore whether Sierra Club has the required standing -- for which Sierra Club must prove the existence of an actual injury that can be fairly traced to a violation of the law by Ameren – or merely seeks to advance a political agenda. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[T]he purpose" of "[t]he actual-injury requirement" is "to prevent[] courts from undertaking tasks assigned to the political branches."). The requested discovery is

---

[9] *See also* Sierra Club, Coal Campaign Team (Jan. 6, 2011), http://clubhouse.sierraclub.org/conservation/energy/coal/coal-campaign-team.aspx ("Our primary strategy for achieving our goals is to make coal plants so controversial and undesirable that proposed coal developers, including their investors, abandon their coal plans . . . . Our specific objectives are to: 1. Stop proposed coal plants from moving forward by intervening in coal plant permitting processes . . .; 2. Begin the orderly retirement of the existing coal plant fleet through public and administrative advocacy and litigation; . . .").

13

also relevant to the Court's civil-penalty calculus, as to the seriousness (or lack thereof) of any alleged violation and under the broader statutory provision allowing the Court to consider any other factor that justice may require. *See* 42 U.S.C. §7413(e)(1). The Court's injunction analysis, too, will require detailed consideration of the harm that Sierra Club has alleged to its members and the public. The extent to which this suit is not about emissions that violate the law, and is not about any actual injury, is directly relevant to all of these issues.

Second, Ameren also seeks discovery into the Beyond Coal campaign for the specific purpose of uncovering information that can be used to impeach the credibility of Sierra Club's witnesses who will testify about various issues, including facts relating to perceived harm, causation on the merits, the seriousness of the alleged violations, whether an injunction would disserve the public interest, and standing. Ameren will show that this case is not a genuine effort by a private citizen to obtain redress for a true injury. Rather, Sierra Club has manufactured a contrived grievance that it hopes will give it the entrée into federal court that it needs to pursue its "Beyond Coal" agenda through so-called impact litigation. That agenda—which aims to force the closure of coal-fired power plants regardless of Clean Air Act compliance—invades the province of the Missouri Public Service Commission[10] and is directly at odds with the policy goals of the Clean Air Act and its citizen-suit provision. *See U.S. v. Hoge Lumber Co.*, 1997 U.S. Dist. LEXIS 22353, at *31 (N.D. Ohio Nov. 5, 1997) (Clean Air Act citizen suit should not be used to "destroy the viability of the Defendant's business"). Ameren's discovery requests—seeking information about the motives, objectives, financing, and operation of the Beyond Coal campaign—are relevant to its defense. "[I]t is entirely proper to obtain information" in discovery

---

[10] Missouri's legislature has designated the Missouri Public Service Commission as the authority who determines the generation resources needed to provide cost-effective and reliable service to Missouri residents. Sierra Club is an active participant in those proceedings.

14

for "cross-examination of adverse witnesses." *Kerr v. U.S. Dist. Ct. for N. Dist. Of Cal.,* 511 F.2d 192, 196–97 (9th Cir. 1975), *aff'd on other grounds*, 426 U.S. 394 (1976); *See also Tanner v. Johnston*, 2013 WL 121158, at *5 (D. Utah Jan. 8, 2013) ("witness bias and credibility" is "relevant for discovery purposes"); Fed R. Civ. P. 26, cmt. b(1) (2000) ("information that could be used to impeach a likely witness" is "properly discoverable" even if "not otherwise relevant").

Finally, Sierra Club's assertion of an "associational privilege" for its Beyond Coal documents also should be rejected. *See In re Motor Fuel Temp.*, 707 F.Supp.2d at 1160 (trade associations' objection to producing internal communications regarding legislative and lobbying activities overruled for failure to show objectively reasonable probability that compelled disclosure "will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests").

## CONCLUSION

For the foregoing reasons, Ameren respectfully requests that the Court grant its Motion to Compel and issue an order compelling Sierra Club to comply with the discovery requests listed in that motion.

Date: September 11, 2015                                        Respectfully Submitted

By:     /s/ Linda K. Stevens
        Renee Cipriano (*pro hac vice*)
        Linda K. Stevens (*pro hac vice*)
        Molly L. Wiltshire (*pro hac vice*)
        SCHIFF HARDIN LLP
        233 South Wacker Drive, Suite 6600
        Chicago, IL 60606
        Telephone:  312.258.5500
        Fax:  312.258.5600
        rcipriano@schiffhardin.com

15

        lstevens@schiffhardin.com
        mwiltshire@schiffhardin.com

        Sarah D. Youngblood (*pro hac vice*)
        SCHIFF HARDIN LLP
        One Market, Spear Street Tower
        Suite 3200
        San Francisco, CA 94105
        Telephone:  415.901-8700
        Fax:  415.901.8701
        syoungblood@schiffhardin.com

         Daniel C. Nelson (40518MO)
        ARMSTRONG TEASDALE LLP
        7700 Forsyth Blvd., Suite 1800
        St. Louis, MO 63105
        Telephone:  314.552.6650
        Fax:  314.612.2273
        dnelson@armstrongteasdale.com

        Attorneys for Defendant Union Electric
        Co., d/b/a Ameren Missouri

CH2\17147961.2