IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SIERRA CLUB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14-cv-408-AGF |
| | ) |
| | ) The Honorable Audrey G. Fleissig |
| UNION ELECTRIC COMPANY, d/b/a | ) |
| AMEREN MISSOURI, | ) |
| | ) |
| Defendant. | ) |

### SIERRA CLUB'S OPPOSITION TO AMEREN'S MOTION TO COMPEL DISCOVERY

Sunil Bector (*pro hac vice*)
Andrea Issod (*pro hac vice*)
SIERRA CLUB
85 Second Street, Second Floor
San Francisco, CA  94105
Tel:  (415) 977-5759
Fax:  (415) 977-5793
sunil.bector@sierraclub.org
andrea.issod@sierraclub.org

James N. Saul (*pro hac vice*)
EARTHRISE LAW CENTER
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR  97219
Tel:  (503) 768-6929
Fax:  (503) 768-6642
jsaul@lawclark.edu

Benjamin Blustein  (*pro hac vice*)
Scott E. Entin  (*pro hac vice*)
MINER, BARNHILL & GALLAND, P.C.
14 West Erie Street
Chicago, IL  60654
Tel:  (312) 751-1170
Fax:  (312) 751-0438
bblustein@lawmbg.com
sentin@lawmbg.com

Sarah E. Siskind (*pro hac vice*)
MINER, BARNHILL & GALLAND, P.C.
44 East Mifflin Street
Suite 803
Madison, WI  53703
Tel:  (608) 255-5200
Fax:  (608) 255-5380
ssiskind@lawmbg.com

*Attorneys for Plaintiff Sierra Club*

# INTRODUCTION

This statutory enforcement action concerns the narrow issue of whether three of Ameren's coal-fired power plants (Labadie, Meramec, and Rush Island) violated the opacity limits established by Missouri regulations and the plants' own operating permits.  However, Ameren has served overreaching, invasive discovery requests seeking to wrest access into Sierra Club's most privileged information, including its internal strategy communications, funding, fundraising, membership lists, campaign messaging, advertising, expenditures, and budget.

Although Ameren sees this lawsuit as an opportunity to rummage through Sierra Club's internal files, the First Amendment does not permit it.  It is beyond dispute that the "freedom to engage in association for the advancement of beliefs and ideas" lies at the heart of the First Amendment.  *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958).  For decades, federal courts have given First Amendment protection to the information sought by Ameren here:  the identity of an association's rank-and-file members; internal communications between an association and its members; and internal strategy and funding information.  Forced disclosure of such information has a chilling effect on First Amendment activities, and therefore requires a "compelling" justification.  Accordingly, a party seeking discovery of such information must meet a heightened relevance standard that is much more demanding than Fed.R.Civ.P. 26(b)(1).

Here, Ameren cannot meet the Rule 26(b)(1) standard, much less the heightened standard required by the First Amendment.  As to each category of information at issue, the Court should uphold the First Amendment privilege and deny Ameren's motion to compel.

1

**BACKGROUND**

I. **Case Overview**

Sierra Club profoundly disagrees with Ameren's supposed "background" characterizations about, among other things, the nature of "opacity" and Sierra Club's allegations in this case. To set the stage for the current discovery dispute, Sierra Club briefly responds.

Ameren's initial assertion that "[t]his case is not about exceeding pollution limits" (Doc. 63 at 1) is absurd. "Opacity is one of the most basic emission limitations imposed on sources of particulate air pollution…." *Sierra Club v. TVA*, 430 F.3d 1337, 1341 (11th Cir. 2005). As the Seventh Circuit has explained,

> [Opacity] is a proxy for particulate emissions; the more opaque the dust or smoke, the more particulates it can be expected to contain, on average. Because opacity sometimes is easier to measure than particulates, it is commonly used as a method for indirectly monitoring and limiting the amount of particulates in emissions.

*Bethlehem Steel Corp. v. EPA*, 782 F.2d 645, 648 (7th Cir. 1986). This Court has held that the opacity limits at issue are enforceable under the Clean Air Act ("CAA") regardless of a defendant's compliance, or lack thereof, with any other limit on emissions. (Doc. 33 at 10).

Thus, contrary to Ameren's assertion, this case does not merely concern "the appearance of emissions." (Doc. 63 at 2). Sierra Club alleges that Ameren's opacity violations harm the health, welfare, recreational, and aesthetic interests of members who live, work, or recreate near Ameren's plants, (Doc. 10 at 12), and that they increase the risk that these members (as well as their families, friends, and community members) will suffer from acute or chronic respiratory, cardiac, or other diseases in the future. (*Id*. at 12-13). Contrary to Ameren's assertion, Sierra Club has not "backed away" from its allegation that opacity violations increase the risk of physical harm. (Doc. 63 at 7 & fn. 3). However, this lawsuit is not and has never been a tort action for personal injury caused by Ameren's emissions. Rather, it is an action to enforce

2

Ameren's compliance with the Clean Air Act, which "imposes strict liability" for violations. *Pound v. Airosol Co.*, 498 F.3d 1089, 1097 (10th Cir. 2007).[1]

Sierra Club alleges approximately 8,000 opacity exceedances, not "very few" as Ameren asserts. (Doc. 63 at 2).  They plainly violate the State Implementation Plan and operating permits notwithstanding the fact that MDNR did not bring suit. Ex. 1 (9/17/15 R. 30(b)(6) Dep. of MDNR), at 32:7-18 (violation occurs notwithstanding MNDR's use of enforcement discretion).

Finally, swinging wildly for the fences, Ameren asserts that Sierra Club's "True Agenda" for bringing this lawsuit is to close the three Ameren plants, regardless of their opacity levels or compliance with the Act.  (Doc. 63 at 3, 12-13).  This is Ameren's asserted rationale for its broad, invasive discovery requests into Sierra Club's Beyond Coal Campaign ("Campaign"), a grassroots initiative to promote clean, renewable energy solutions.  Ameren seeks to use discovery in this case to rummage through the Campaign's internal files relating to strategy, communications, funding, and budget.  (Doc. 62 at 3, summarizing RFP Nos. 38-52).

Sierra Club has never hidden the objectives of the Beyond Coal Campaign; as implied by its name and publicly stated on its website, the Campaign works with grassroots activists in local communities to retire dirty and outdated coal plants and prevent new coal plants from being built.[2]  This is quintessential First Amendment activity by an association of citizens for the advancement of common beliefs and ideas.

---

[1] A strict liability approach is common to environmental statutes. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 151 (4th Cir. 2000) (in enacting the Clean Water Act, "Congress …instituted a regime of strict liability for illegal pollution discharges"); *Uniroyal Chemical Co. v. Deltech Corp.*, 160 F.3d 238, 243 (5th Cir. 1998) (CERCLA imposes strict liability, thus plaintiffs are generally not required to prove causation).

[2] http://content.sierraclub.org/coal/ (last visited 9/22/15).

3

However, the objective of this opacity lawsuit is much more simple and narrow: to ensure that these three existing coal-fired power plants – Labadie, Meramec, and Rush Island – comply with Clean Air Act regulations while they continue to burn coal.[3]

## II. Status of Discovery

This case is about *Ameren's* compliance with the Clean Air Act, not Sierra Club's motives or internal operations. *Pound*, 498 F.3d at 1097, 1102. Nevertheless, Sierra Club has expended tremendous resources responding to requests for its internal emails and documents, culling tens of thousands of documents and painstakingly reviewing over 10,000 internal documents for privilege. Sierra Club agreed to Ameren's request to continue fact discovery until November 30, 2015, because Ameren for over six months has refused to answer Sierra Club's basic discovery requests regarding Ameren's affirmative defenses, and because Ameren only in the last month produced the opacity monitor and boiler operational data (along with tens of thousands of pages of documents) requested by Sierra Club in March 2015, delaying the ability of Sierra Club's experts to prepare their reports.

## ARGUMENT

### I. Legal Framework for Analyzing First Amendment Privilege

**A. The First Amendment protects against compelled disclosure of affiliations and activities which cause a chilling effect on the free exercise of associational rights.**

The Supreme Court has long recognized "the vital relationship between freedom to associate and privacy in one's associations." *NAACP*, 357 U.S. at 462. As the Court put it,

---

[3] In its efforts to establish Sierra Club's "True Agenda," Ameren resorts to blatant and improper mischaracterizations of the record. Ameren wildly and baselessly accuses Sierra Club's counsel of removing statements from its website after receiving Ameren's discovery requests. (Doc. 63 at 12, n. 6). Ameren next falsely asserts that a Sierra Club press release describes this lawsuit as "a means to force Ameren to 'phase out' coal-fired generation" (*Id*. at 12 & n. 8), when the press release says no such thing. *See* Ex. 2, Press Release (March 5, 2014). Ameren further asserts that the Amended Complaint seeks closure of the facilities at issue, even if emissions are within legal limits (Doc. 63 at 12-13); it says no such thing.

4

citizens have a constitutional right "to pursue their lawful private interests *privately* and to associate freely with others in so doing." *Id*. at 466 (emphasis added).  The Court has repeatedly observed that compelled disclosure of affiliations and activities can have a substantial "deterrent and 'chilling' effect on the free exercise of constitutionally enshrined rights." *Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539, 557 (1963).  Federal courts have applied these principles to block the compelled disclosure of, *inter alia*, an association's members' identities, *see e.g*., *NAACP*, 357 U.S. at 465-66; internal communications relating to campaign strategy and tactics, *see e.g*., *Perry v. Schwarzenegger*, 591 F.3d 1126, 1143-45 (9th Cir. 2009); *AFL-CIO v. FEC*, 333 F.3d 168, 175-79 (D.C. Cir. 2003); and donor and funding information.  *Tree of Life Christian Sch. v. City of Upper Arlington*, 2012 WL 831918, *3-4 (S.D. Ohio Mar. 12, 2012).

### B.  Infringement on associational rights must serve a "compelling" state interest.

Infringement on the right to associate may be justified only where necessary to serve "compelling state interests" that "cannot be achieved through means significantly less restrictive of associational freedoms."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *Gibson*, 372 U.S. at 546 ("compelling" state interest required); *NAACP*, 357 U.S. at 461 ("closest scrutiny").  An order to produce discovery constitutes state action requiring such a compelling justification. Indeed, the "threat to First Amendment rights may be more severe in a discovery context, since the party directing the inquiry is a litigation adversary who may well attempt to harass his opponent and gain strategic advantage by probing deeply into areas which an individual may prefer to keep confidential."  *Britt v. Superior Court*, 574 P.2d 766, 774 (Cal. 1978).

### C.  A test of heightened relevance applies, not Rule 26(b)(1).

For these reasons, courts apply a more demanding test for discovery than the liberal Rule 26(b)(1) relevance standard when First Amendment rights are involved.  "A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence

5

asserting a First Amendment *privilege*," *Perry*, 591 F.3d at 1140 (citations omitted), which the party seeking discovery must overcome. Although there is little direct authority on this issue in the Eighth Circuit, ample guidance is offered by other federal courts.

For example, the Ninth Circuit applies a widely-used two-part framework in evaluating a claim of First Amendment privilege. First, the party asserting the privilege must present a "prima facie showing of arguable first amendment infringement," by demonstrating that enforcement of the discovery requests "will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry,* 591 F.3d at 1140 (citations omitted). Once the movant has made a *prima facie* case, the burden shifts to the party seeking disclosure to demonstrate "an interest in obtaining the disclosures it seeks …which is sufficient to justify the deterrent effect." *Id*. (quoting *NAACP*, 357 U.S. at 463). The court engages in a balancing test, and may consider such factors as "the centrality of the information sought to the issues in the case, … the existence of less intrusive means of obtaining the information, … and the substantiality of the First Amendment issues at stake." *Id*. at 1140-41 (citations omitted). The *Perry* Court further held:

> Importantly, the party seeking the discovery must show that the information sought is *highly relevant* to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). *The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must otherwise be unavailable*.

Id. at 1141 (emphasis added). Courts in other circuits have applied a similar analysis. *See e.g.*, *Natural Resources Defense Council, Inc. v. Ill. Power Resources*, LLC, 2015 WL 4910204, *2 (C.D. Ill. Aug. 17, 2015) (Sierra Club and Ameren-affiliated company in Illinois agree that *Perry* framework should be applied); *Tree of Life,* 2012 WL 831918, at *3.

6

**II. Sierra Club Members' Identities, Activities, Communications, and Medical Records Are Protected by the First Amendment, and Are Not Highly Relevant to Any Issue, and Hence this Court Should Not Compel Disclosure.**

For any Sierra Club members who happen to live within 5 miles of the plants, Ameren has moved to compel their names, addresses, membership activities within Sierra Club, medical records that relate in any way to the opacity violations, and communications with Sierra Club (Interrogatory No. 14, RFP Nos. 14(a)-(e), 15), so that Ameren can depose them about their experiences. Courts have repeatedly held that forced disclosure of such information infringes the First Amendment. Moreover, Ameren's flimsy justifications for identifying and deposing these members do not meet the Rule 26(b)(1) standard, much less the applicable heightened standard.

    **A. Courts have consistently held that disclosure of members' identities and activities has a chilling effect on First Amendment rights.**

Compelled disclosure of an organization's members and their activities goes to the very heart of First Amendment protections. *See NAACP*, 357 U.S. at 466; *Perry*, 591 F.3d at 1133 (quoting district court's holding that "[i]f the …privilege …protects anything, it is the identities of rank-and-file volunteers and similarly situated individuals"); *Wyoming v. U.S. Dept. of Agriculture*, 239 F. Supp.2d 1219, 1237 (D. Wyo. 2002) ("Federal courts have consistently held that disclosure of internal associational activities (*i.e.*, membership lists, volunteer lists, financial contributor lists, and past political activities of members) … chills freedom of association").

Disclosure of such information chills associational rights because of "the vital relationship between freedom to associate and privacy in one's associations." *NAACP*, 357 U.S. at 462. Although some individuals (such as Sierra Club's Standing Members here) are willing to step forward, be identified, and give testimony on behalf of the association, other members prefer "to pursue their lawful private interests privately and to associate with others in so doing." *Id.* at 466; *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 559 (1985) (recognizing a First Amendment right "*not* to speak publicly"). Indeed, many individuals join an organization

7

such as Sierra Club and pay their annual membership dues precisely so that Sierra Club will fight environmental battles *on their behalf*. As the attached declarations make clear, membership in Sierra Club will likely be deterred if it subjects individuals to deposition by their utility company's lawyer simply because Sierra Club sues a facility near their home.

Accordingly, as several circuits have held, it is unnecessary to show that an association's members may be subjected to violence, economic reprisals, or harassment, although such evidence, if it exists, "speaks to the strength of the First Amendment issues asserted." *AFL-CIO*, 333 F.3d at 176; *Perry*, 591 F.3d at 1143. Indeed, reprisal is only one of several ways that a chilling effect can be shown. *See e.g.*, *Dunnet Bay Const. Co. v. Hannig*, 2011 WL 5417123, at *3 (C.D. Ill. Nov. 9, 2001) (sometimes disclosure will subject members to harassment, and sometimes disclosure may inhibit supporters from participating in advocacy activities).[4]

Here, there is stark evidence of reprisals and intimidation, and thus the First Amendment rights are particularly strong. Sierra Club members who live near the plants have legitimate concerns of retribution by Ameren based upon its past conduct, including economic boycotts of local businesses. Ex. 3 (7/10/13 sworn testimony of Lisa Venezia, owner of the Labadie Market and Deli, describing Ameren's economic boycott of the store (including refusing purchases with the Ameren corporate credit card) after it permitted local environmental activists to use the store to publicly discuss a controversial Labadie plant landfill project). Other Sierra Club members

---

[4] Ameren's authority for the proposition that a party asserting First Amendment rights *must* show threats, harassment, or reprisal is very thin. (Doc. 63 at 10). Although Ameren cites *Ala. State Fed'n of Teachers, AFL-CIO v. James*, 656 F.2d 193, 197 (5th Cir. 1981), that court did not address whether threats, harassment, or reprisal were *required*. Ameren also relies on *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp.2d 1145, 1153 (D.Kan. 2010), but ignores the Tenth Circuit's holding on appeal that it is sufficient to show that compelled disclosure would "stifle full and frank discussions." within the organization. 641 F.3d 470, 490 (10th Cir. 2011). Moreover, there is no authority for Ameren's argument, Doc. 63 at 10 n.5, that depositions or interviews cannot have a chilling effect. Ameren cites *NAACP v. Brackett*, 130 F. App'x 648, 652-53 (4th Cir. 2005), which simply held that the governmental interviews, *which may or may not have constituted harassment,* were not likely to be repeated and therefore did not warrant an injunction. And *Jones v. Unknown Agents of FEC*, 613 F.2d 864, 875 (D.C. Cir. 1979), only held that the particular facts of that case did not demonstrate a chilling effect.

8

have experienced harassment and intimidation for their environmental activism. Patricia Schuba, board president of the Labadie Environmental Organization ("LEO") and a Standing Member who will testify in this case, has been subjected to trespassing on her property, spray-painted graffiti on her car ("LEO Pig"), a severed pig's head left in her driveway, and stolen/destroyed surveillance equipment. (Ex. 4 (Decl. of P. Schuba, 9/28/15), at ¶¶ 7-9). Both Ms. Schuba and St. Louis-area Sierra Club organizer Sara Edgar attest that members and potential members often express their concerns about retribution for participating in Sierra Club, and that forced disclosure of their membership would deter their participation. (*Id.*, at ¶¶ 10-12; Ex. 5 (Decl. of S. Edgar, 9/28/15), at ¶¶ 6-12.

### B. Ameren fails to show a compelling need for members' identities or depositions.

Having established a *prima facie* showing of First Amendment infringement, the burden shifts to Ameren to show a compelling need for the members' identities. Neither the identity of Sierra Club members, nor potential deposition testimony from them, is relevant to the four issues identified by Ameren: standing, causation, penalties, and injunctive relief.[5]

**Standing**. There is no legal authority for Ameren's assertion that the experiences of *other* Sierra Club members who live near the plants "might undercut" the testimony of the seven individuals who have agreed to step forward as Standing Members. (Doc. 63 at 8).

To establish organizational standing, Sierra Club need only show that "*any one*" of its members has suffered an actual or threatened injury. *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (emphasis added). In fact, Ameren concedes that the standing requirements must be met only for "one or more" members. (Doc. 63 at 5). No quorum or majority of its members need suffer an

---

[5] Ameren's argument that Sierra Club has "put at issue" the identities and experiences of other Sierra Club members is nonsense since *Ameren* is the party attempting to make it an issue. (Doc. 63 at 8). However, ultimately what gets "put at issue" is governed by the pertinent legal issues in the case which, as shown herein, are unrelated to the identity or experiences of other Sierra Club members.

9

injury-in-fact. The injury must be "fairly …trace[able] to the challenged action of the defendant," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted), but this requirement should not be confused with proof of causation, as standing does not require a showing of causation. *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 793 (5th Cir. 2000); *Public Interest Research Grp., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72-73 & n.10 (3d Cir. 1990) ("[T]ort-like causation is not required by Article III"). Finally, it must be "likely" that the injury is redressable by a favorable decision. *Lujan*, 504 U.S. at 560.

Sierra Club will rely on the testimony of seven Standing Members who live, work, and recreate near the three plants, and who have agreed to step forward, be deposed, and produce non-privileged and relevant documents. These Standing Members will establish an injury-in-fact to their health, welfare, recreational and aesthetic interests due to Ameren's opacity violations.

Once Sierra Club establishes standing through these Standing Members, the testimony of *other* Sierra Club members cannot "undercut" or somehow de-establish standing. Even if Ameren were able to prove that other members feel unaffected by the facilities' emissions, such proof would not make a dent in Sierra Club's standing, and Ameren cites no authority to suggest that it would. Thus, the deposition testimony sought by Ameren – "How many and which members feel they have been impacted by emissions from Ameren's facilities? How many and which members do not?" (Doc. 63 at 7) – is not relevant to standing under Rule 26(b)(1), much less does it meet the heightened standard required by the First Amendment.

**Causation on the Merits**. Ameren next asserts in conclusory fashion that the testimony of other Sierra Club members may be relevant to the issue of "causation on the merits," which Ameren fundamentally misconstrues as a "link between [Sierra Club's] members' alleged injuries and the violations alleged in the Complaint." (Doc. 63 at 6, 8).

10

Since this lawsuit is not a tort action for damages to Sierra Club members, tort-like causation is not required. Rather, it is an enforcement action under the CAA, which "imposes strict liability" for violations. *Pound*, 498 F.3d at 1097. Injury-in-fact to a Sierra Club member is relevant only to Article III standing, as discussed above. Once standing is established, it is irrelevant whether *other* Sierra Club members were harmed. *See Sierra Club v. Energy Future Holdings Corp., et al.*, No. 5:10CV156 (E.D. Tex. Dec. 30, 2013) (attached as Ex. 6 at 5). Nothing in the Act, the SIP, or the Title V permits creates an affirmative defense to liability based upon some citizens feeling unaffected by violations. Thus, it would be simply harassing for Ameren to depose other members about whether they "feel they have been impacted" (Doc. 63 at 7), or to obtain their medical records when their medical conditions are not at issue.

**Penalties.** In considering "the seriousness of the violation" for purposes of assessing civil penalties under 42 U.S.C. § 7413(e)(1), the relevant inquiry is not whether other Sierra Club members support the evidence presented by the Standing Members, but "whether (and to what extent) the activity of the defendant actually resulted or was likely to result in the emission of pollutant in violation of the level allowed by an applicable State Implementation Plan, federal regulation, or permit." (Ex. 7, U.S. EPA, Clean Air Act Civil Penalty Policy (10/25/91), at 9).

**Injunctive Relief.** In contesting injunctive relief, Ameren will have an uphill battle showing that its continued violations of the Clean Air Act are in "the public interest." However, Ameren can attempt to show lack of public harm through its own experts and fact witnesses who live near the plants. Compelled disclosure of Sierra Club's membership lists is unnecessary.

### III. Beyond Coal Campaign Materials are Irrelevant and Protected by the First Amendment, and this Court Should Not Compel Their Disclosure

Ameren's discovery requests relating to the Beyond Coal Campaign are aimed squarely at privileged material and threaten Sierra Club's right to engage in political advocacy by organizing, operating, and deliberating in private. The Campaign is a nationwide effort to

11

promote clean, renewable energy and is far broader, and has a different purpose, than this narrow enforcement lawsuit focused on Ameren's opacity violations. Yet Ameren, which views the Campaign as its enemy, seeks to use this litigation as an excuse to scour the Club's files by issuing *seventeen* separate RFPs (Doc. 62 at 3-4), seeking the Campaign's internal deliberations and strategy (RFP Nos. 6, 34, 38, 39, 40, 41, 45, 46, 47, 48, 49, 50, 51, 52), funding (RFP Nos. 41, 42, 43, 44), and donors and contributors (RFP Nos. 38, 39, 41, 42, 43).

    A. **Information about political advocacy groups' internal deliberations, strategy, funding, and donors is protected by the First Amendment.**

The freedom of advocacy groups like Sierra Club to privately deliberate, "organize, raise money, and associate with other like-minded persons" about issues of public concern is a core First Amendment right. *Wyoming v. United States Dep't of Agric.,* 208 F.R.D. 449, 454 (D.D.C.2002). *See also Perry*, 591 F.3d at 1162-63 (discussing the "right to exchange ideas and formulate strategy and messages, and to do so in private."). For this reason, courts readily hold that compelled disclosure of internal communications about political advocacy "can have a deterrent effect on participation in campaigns," and "can discourage organizations from joining the public debate ...," *id.* at 1162 & n.8, triggering First Amendment protections. *See also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 852521, at *4-6 (D. Kan. Mar. 16, 2007) (advocacy strategies are "central to first amendment values").

Similarly, the compelled disclosure of donors who wish to remain anonymous—even with a protective order in place—or fundraising strategies risks chilling First Amendment rights because such disclosure threatens "strain on the relationship between [the association] and its donor" and the ability of an association to effectively seek donations in the future. *Tree of Life*, 2012 WL 831918, at *3-4 (denying discovery of identity of donor despite protective order). *See also Int'l Union, UAW v. Nat'l Right to Work Legal Def. & Ed. Found.*, 590 F.2d 1139, 1152-53

(D.C. Cir. 1978) (vacating order to disclose donors); *Indep. Inst. v. Gessles*, 2011 WL 809781, at *1-2 (D. Colo. Mar. 2, 2011) (denying motion to compel financial and funding information).

The declaration of Holly Bender, Beyond Coal's Deputy Campaign Director, makes clear that forced disclosure of internal deliberations and strategies would drastically alter Sierra Club's communications, disrupt the free flow of ideas, and frustrate its ability to conduct its affairs.  Ex. 8 (H. Bender Decl., 9/28/15) at ¶¶ 6, 8-11.  Additionally, the declaration of Mary Nemerov, Sierra Club's Chief Advancement Officer, establishes that protecting the identify of donors is critical to the organization's ability to fundraise.  Ex. 9 (M. Nemerov Decl., 9/28/15).

A protective order would be utterly ineffective to protect Sierra Club rights here because it is the disclosure of information to *Ameren itself* that would deter membership, *Int'l Union v. Garner*, 102 F.R.D. 108, 116 (M.D. Tenn. 1984) (rejecting discovery and holding protective order insufficient); chill the free exchange of ideas and strategies, *Perry*, 591 F.3d at 1164 (same); and dissuade donors, *Tree of Life*, 2012 WL 831918, at *3-4 (same).

B. **Ameren's irrelevant and speculative justifications for discovery of Campaign materials cannot overcome Sierra Club's First Amendment privilege.**

Sierra Club plainly has made a *prima facie* showing of First Amendment infringement as to the Beyond Coal Campaign materials, and the burden now shifts to Ameren to present a compelling justification for disclosure.  It utterly fails to do so.

Ameren first claims it needs discovery regarding the Campaign to "explore whether Sierra Club has the required standing … or merely seeks to advance a political agenda," (Doc. 63 at 13), speculating that "this case is not a genuine effort by a private citizen to obtain redress for a true injury." (*Id.* at 14).  This argument makes no sense.  Whether a party has a "political agenda" is an entirely separate question from whether it suffered an injury-in-fact, and vice-versa.  Ameren can explore standing by examining the Standing Members about their injuries.  Sierra Club's internal political strategies have no bearing at all on this issue.  *See* Order in *La.*

13

*Envtl. Action Network v. Cintas Corp.*, No. 03-711-C-M2 (M.D. La. Sept. 30, 2004) (Ex. 10 at 3) (denying motion to compel membership and funding information, noting "The question of whether LEAN has any ulterior motives for bringing this lawsuit … has no bearing on any issues of liability, damages or standing" and that standing can be challenged without "invading the privacy of every person who is a member or who ever contributed money to [LEAN].").

Ameren also argues that Sierra Club's "True Agenda" is relevant to penalties because it bears on the seriousness of *Ameren*'s CAA violations and "any other factor that justice may require." (*Id.* at 3, 14-15). Ameren cites no cases in support, and the law is against it. Courts have repeatedly held that the motives of citizens bringing CAA suits generally—and the Beyond Coal Campaign in particular—are *irrelevant* to *any* issue in such actions. *See, e.g.*, *Pound*, 498 F.3d at 1097 (vacating district court decision considering plaintiff's motivation in assessing CAA penalties and noting "no authority" existed for district court doing so); *Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 670 F. Supp. 2d 825, 832 n.1 (S.D. Ill. 2009) (criticizing defendant for "harp[ing] on the Sierra Club's announced goal of opposing all coal-burning power plants" and deeming the issue "irrelevant"); *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 853 F. Supp. 2d 1086, 1092 (D. Colo. 2012) (dubbing "plaintiff's alleged motives" in citizen suit about opacity "irrelevant"). The seriousness of Ameren's violations and the appropriate penalty turn on *Ameren*'s conduct, and as a matter of law and logic have nothing to do with the Campaign.

Ameren's theories fail for other reasons. To begin, they are based on rank speculation that discovery will turn up some unspecified smoking gun showing that Sierra Club fabricated the basis of this lawsuit. But "[m]ere speculation that information might be useful will not suffice" to overcome the First Amendment privilege. *Black Panther Party v. Smith*, 661 F.2d 1243, 1268 (D.C. Cir. 1981). Furthermore, Ameren cites *no authority whatsoever* for the proposition that an advocacy group—be it Sierra Club, the NRA, or the U.S. Chamber of

14

Commerce—subjects its private deliberations to discovery if another party can gin up some allegedly nefarious "True Agenda." Ameren's position would have the perverse effect of not only chilling groups from engaging in private discussions about political issues, but from seeking redress in the courts. The associational privilege prevents this Hobson's Choice. *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 209 & n.25 (N.D. Cal. 1983). Finally, Ameren's requests must be rejected because it can advance its (irrelevant) line of argument through means that are "significantly less restrictive of associational freedoms." *Perry*, 591 F.3d at 1159. As Ameren's brief shows, there are many publicly-available Campaign materials with which it can launch its irrelevant, inflammatory broadsides about Sierra Club's supposedly hidden "True Agenda."

Simply put, Ameren's demand for sensitive, non-public Campaign information is merely a fishing expedition through which Ameren hopes to pry into the files of a perceived adversary and has *nothing* to do with this case. This Court should reject it, as others have. *See* Order in *Sierra Club v. Energy Future Holdings Corp.*, 10-cv-156 (E.D. Tex. Dec. 30, 2013) (attached as Ex. 6 at 8) (deeming Campaign materials irrelevant and denying motion to compel).

## CONCLUSION

For the foregoing reasons, Ameren's motion to compel should be denied.

Date:  September 28, 2015                    Respectfully submitted,

/s/ Benjamin Blustein
Benjamin Blustein  (*pro hac vice*)
Scott E. Entin  (*pro hac vice*)
MINER, BARNHILL & GALLAND, P.C.
14 West Erie Street
Chicago, IL  60654
Tel:  (312) 751-1170
Fax:  (312) 751-0438
bblustein@lawmbg.com
sentin@lawmbg.com

15

Sarah E. Siskind (*pro hac vice*)
MINER, BARNHILL & GALLAND, P.C.
44 East Mifflin Street
Suite 803
Madison, WI  53703
Tel:  (608) 255-5200
Fax:  (608) 255-5380
ssiskin@lawmbg.com

Sunil Bector (*pro hac vice*)
Andrea Issod (*pro hac vice*)
SIERRA CLUB
85 Second Street, Second Floor
San Francisco, CA  94105
Tel:  (415) 977-5759
Fax:  (415) 977-5793
sunilbector@sierraclub.org
andrea.issod@sierraclub.org

James N. Saul (*pro hac vice*)
EARTHRISE LAW CENTER
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Tel: (503) 768-6929
Fax:  (503) 768-6642
Fax: (503) 768-6642
jsaul@lawclark.edu

*Attorneys for Plaintiff Sierra Club*

16