UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-cv-00408-AGF |
| | ) | |
| UNION ELECTRIC COMPANY, | ) | |
| d/b/a AMEREN MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's motions (Doc. Nos. 62 & 76) to

compel discovery.  For the reasons set forth below, Defendant's motions shall be denied.

**BACKGROUND**

Plaintiff is a non-profit environmental organization with over 8,700 members in

Missouri.  Defendant is an electric company with three coal-fired power plants in

Missouri, each operating with a permit issued under Title V of the Clean Air Act

("CAA"), 42 U.S.C. §§ 7661, et seq., and Missouri's state implementation plan ("SIP"),

as approved by the Environmental Protection Agency ("EPA").   Plaintiff filed its

amended complaint on March 17, 2014, under the CAA's "citizen suit" provision, 42

U.S.C. § 7604(a), alleging that Defendant's emissions exceeded the express limits on

opacity set forth in Defendant's Title V permits and Missouri's SIP.  Opacity refers to a

plant's visible emissions, measured as a percentage of the amount of light being

transmitted through a plume, and, according to Plaintiff, opacity is a general indicator of

the amount of particulate matter ("PM") emitted from a source.

For purposes of standing, Plaintiff alleges that these opacity violations harm the health, welfare, recreational, and aesthetic interests of its members who live, work, or recreate near Defendant's power plants.  Specifically, Plaintiff asserts that its members "enjoy a number of recreational activities, including camping, boating, and wildlife observation, in the vicinity of, or downwind from, one or more of [Defendant's] Power Plants[,] [and] [s]eeing the smoke from [Defendant's] Power Plants reduces these members' enjoyment of those recreational activities."  (Doc. No. 10 at 13).  Plaintiff also asserts that its members living, working, or recreating near Defendant's plans are exposed to increased air pollution as a result of Defendant's opacity violations, and that the "increase in exposure to PM increases the risk of acquiring respiratory or cardiac disease."  *Id.*  Plaintiff seeks declaratory and injunctive relief, as well as the imposition of statutory civil penalties.

Defendant has filed two motions to compel discovery.  The first relates to Plaintiff's responses to 22 requests for production and two interrogatories.  As Defendant asserts, these discovery requests fall into three general categories:  (1) identification of Plaintiff's members who are allegedly negatively impacted by emissions from Defendant's facilities, and information regarding their injuries; (2) communications between Plaintiff and its members regarding emissions from Defendant's facilities at issue and regarding this lawsuit; and (3) documents relating to Plaintiff's motive and rationale for filing this lawsuit, including those regarding Plaintiff's "Beyond Coal" campaign against coal-fired power plants.

The second motion to compel focuses on the latter two categories of discovery, but relates specifically to discovery sought, by way of subpoenas, from the six members of Plaintiff whom Plaintiff has identified as witnesses to demonstrate standing in this case ("Standing Members").

Defendant argues that the discovery sought is relevant to issues of standing, causation, and the appropriateness of Plaintiff's requests for civil penalties and injunctive relief.  Defendant also asserts that the confidentiality of this discovery is adequately protected by the Stipulated Protective Order entered in this case.

Regarding the first category of discovery, Plaintiff has produced or agreed to produce discovery relating to the identity of and injuries alleged by its Standing Members.  But it has refused to identify or produce information regarding its rank-and-file members, asserting that such information is protected by the First Amendment.

Regarding the second category of discovery, directed to Plaintiff (by discovery request) and the Standing Members (by subpoena), Plaintiff and the Standing Members claim to have produced all discovery relating to the Standing Members' alleged injuries. But Plaintiff and the Standing Members have withheld certain other communications about this lawsuit, including emails "brainstorming" about potential standing members for this lawsuit and emails about press events relating to this lawsuit, on the ground that these communications include frank discussions of internal advocacy strategies that are protected by the First Amendment.

Finally, Plaintiff and the Standing Members have refused to produce any discovery related to Plaintiff's alleged motive for filing this lawsuit, including discovery

related to the "Beyond Coal" campaign, on the ground that such discovery is irrelevant to any issue in this case and is also protected by the First Amendment.

Plaintiff has presented declarations from one of its Standing Members and a few of its officers and employees, attesting to the negative impact that the disclosure of each category of the discovery at issue would have on members' associational rights.  These declarants describe past instances of harassment of and threats against Plaintiff's local members as a result of their involvement in campaigns directed against Defendant's operations, and state that they and other members feel that public disclosure of members' identities and internal strategy discussions will chill membership and will make members and employees less willing to communicate freely about campaign objectives, for fear of retaliation.

## DISCUSSION

Defendant, as the moving party, bears the burden of showing that the requested discovery is discoverable within the meaning of Federal Rule of Civil Procedure 26.  *See Cent. States, Se. & Sw. Areas Pension Fund v. King Dodge, Inc*., No. 4:11MC00233 AGF, 2011 WL 2784118, at *2 (E.D. Mo. July 15, 2011).  "[A]fter the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Cincinnati Ins. Co. v. Fine Home Managers, Inc*., No. 4:09CV234-DJS, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010).

"Although the First Amendment does not normally restrict the actions of purely private individuals, the amendment may be applicable in the context of discovery orders, even if all of the litigants are private entities."  *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987).  In such cases, a court order compelling or enforcing discovery "provide[s] the requisite governmental action that invokes First Amendment scrutiny." *Id.*

 "A party who objects to a discovery request as an infringement of the party's First Amendment rights [to freedom of association] is in essence asserting a First Amendment *privilege*."  *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010).  In cases involving organizations, the First Amendment's protection "extends not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it."  *Int'l Union v. Nat'l Right to Work Legal Defense & Ed. Found., Inc.,* 590 F.2d 1139, 1147 (D.C. Cir. 1978).  The First Amendment may protect membership lists of advocacy groups, as well as requests for internal communications of and among such groups, where disclosure would "have a potential for chilling the free exercise of political speech and association guarded by the First Amendment."  *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454-55 (D.D.C. 2002).

The parties agree that, although there is little authority in the Eighth Circuit evaluating a claim of First Amendment privilege in the discovery context, the balancing test used by other circuits should apply here.

Some circuits apply a two-part framework to claims of First Amendment discovery privilege.  "The party asserting the privilege must demonstrate a prima facie

showing of arguable first amendment infringement," demonstrating that enforcement of the discovery requests will result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (citations omitted).  If this prima facie showing is made, the burden shifts to the party seeking the discovery to demonstrate "an interest in obtaining the disclosures it seeks which is sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right of association." *Id.* at 1161 (citation omitted).  "[T]he party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Id.*  "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

Other circuits apply a similar balancing test, first determining the validity of the claimed First Amendment privilege and then considering factors such as "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Grandbouche*, 825 F.2d at 1466.

Upon review of the declarations submitted by Plaintiff, the Court finds that Plaintiff has made a prima facie showing that disclosure of the requested information will chill members' associational rights.  *See Perry*, 591 F.3d at 1163-64 (finding that declarations from several individuals attesting to the impact that compelled disclosure

- 6 -

would have on participation and formulation of strategy constituted a sufficient prima facie showing).  Therefore, the Court will weigh Defendant's interest in obtaining each category of information.

Defendant asserts that each category of information is relevant for four reasons. First, Defendant argues that the information is relevant to standing, as it may undercut or challenge the Standing Members' allegations of injury.  Second, Defendant argues that the information may be relevant to causation, which Defendant asserts is a required element of a CAA citizen suit separate and apart from standing.  Third, Defendant argues that the information is relevant to the assessment of a civil penalty, because one of the factors considered for such penalties is the seriousness of the violation.  Finally, Defendant argues that the information is relevant to the injunctive relief factors of balance of hardships and the public interest.

**Identification and Communications of Non-Standing Members**

The Court agrees with Plaintiff that the identities and communications of non-standing members are irrelevant to any issue in this case.  As to standing, it is sufficient if "any one" of Plaintiff's members has suffered injury in fact fairly traceable to Defendant's conduct and likely to be redressed by a favorable decision by the Court. *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013).  Whether or not other members have suffered similar injuries is irrelevant to standing.

As to causation, the Court is not convinced that, apart from the general causation-prong of Article III standing, a plaintiff in a CAA citizen suit such as this one must demonstrate causation and injury to prevail on the merits.  *See* 42 U.S.C. § 7604(a)

- 7 -

(creating a private right of action against "any person . . . who is alleged to have violated

. . . or to be in violation of an emission standard or limitation"); *Sierra Club v. Franklin*

*Cty. Power of Ill., LLC*, 546 F.3d 918, 923-39 (7th Cir. 2008) (describing citizen suit

requirements but not addressing causation or injury except in the context of standing);

*Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1341-46 (11th Cir. 2005) (same).  As

discussed below, Defendant can test the injury and traceability assertions of the Standing

Members using discovery relating to those members' injuries.  But Defendant has not

demonstrated that discovery regarding Plaintiff's other, rank-and-file members is

warranted here.

As to the civil penalty and injunctive relief factors, the Court agrees with Plaintiff

that Defendant may rely on its own experts and fact witnesses, including persons who

live near Defendant's facilities but who are not Sierra Club members, to demonstrate that

the alleged violations were not serious enough to warrant penalties or an injunction in this

case.  As such, the Court finds that Defendant's interest in the identities and

communications of the non-standing members is not sufficient to justify the deterring

effect such a disclosure may have on the associational rights of Plaintiff's members.

Therefore, the Court will deny Defendant's motions in this regard.

### Communications of Standing Members

Unlike Plaintiff's rank-and-file members, the Standing Members "have put their

credibility at stake on . . . essential issues of [Plaintiff's] case"—namely, whether "they

have been injured in a concrete and particularized and actual or imminent way by

[Defendant's] opacity violations," so as to give Plaintiff standing to bring this case.  *Nat'l*

*Res. Def. Council, Inc v. Ill. Power Res., LLC*, No. 13-CV-1181, 2015 WL 4910204, at

\*4 (C.D. Ill. Aug. 17, 2015).  However, Plaintiff asserts that it has not withheld any

discovery relating to the Standing Members' alleged injuries.  Therefore, to the extent

Defendant's motions seek to compel this discovery, it is moot.

       Defendant argues that it is entitled not only to discovery relating to the Standing

Members' injuries but also to other communications of the Standing Members relating to

this lawsuit generally because such communications "might" reveal that the Standing

Members had little concern about Defendant's emissions.  But even if such

communications existed—for example, if the Standing Members sent emails indicating

that their injuries were exaggerated or non-existent—those communications would

"relate to" the Standing Members' alleged injuries and would have, according to Plaintiff,

been produced.  And if such communications do exist, but have not been produced,

Plaintiff must do so promptly.

       To the extent that Defendant seeks additional communications of the Standing

Members about this lawsuit for the purpose of discovering other motives for filing the

lawsuit, unrelated to the Standing Members' alleged injuries, the Court will deny the

Defendant's request as irrelevant, as discussed below.

**<u>Documents Relating to Plaintiff's Motive for Filing Suit</u>**

       The Court agrees with Plaintiff that discovery relating to Plaintiff's alleged motive

for bringing this lawsuit, such as discovery regarding the "Beyond Coal" campaign, is

irrelevant to any issue in this case.  Defendant asserts that it needs such discovery "to

explore the connections between this lawsuit and Sierra Club's anti-coal political

agenda," and to "impeach the credibility of Sierra Club's witnesses who will testify about various issues, including facts relating to perceived harm, causation on the merits, the seriousness of the alleged violations, whether an injunction would disserve the public interest, and standing."  (Doc. No. 63 at 14-15.)

For the reasons discussed above, the only relevant harm in this case is the harm asserted by Plaintiff's Standing Members, and Plaintiff states it has already produced all discovery relating to these members' injuries.  Plaintiff's alleged motive for bringing this lawsuit is relevant neither to standing nor to the civil penalty or injunctive relief analysis. *See Pound v. Airosol Co., Inc*., 498 F.3d 1089, 1097 (10th Cir. 2007) (finding that a plaintiff's motivation in bringing a citizen suit was irrelevant to the determination of an appropriate civil penalty under the CAA).  Therefore, the Court will deny Defendant's motions in this regard.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motions to compel are **DENIED**. (Doc. Nos. 62 & 76.)

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of December, 2015.