IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-cv-408-JAR |
| | ) | |
| | ) | The Honorable John A. Ross |
| UNION ELECTRIC COMPANY, d/b/a | ) | |
| AMEREN MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

## INTRODUCTION

Ameren's motion to compel and supporting memorandum (Docs. 111-12) devote long

pages to Ameren's view of the facts and irrelevant issues such as the price of electricity in

Missouri, and Sierra Club's purported national strategy to drive up the cost of electricity.

Tellingly, Ameren devotes little attention to the specific discovery requests at issue.  As shown

herein, Sierra Club's discovery responses to these requests are in fact complete and thorough,

and provide detailed information about the injunctive and monetary remedies it seeks.  Ameren's

motion is meritless, and should be denied.

## BACKGROUND

Sierra Club strongly disputes Ameren's "background" characterizations about, among

other things, the nature of "opacity" and Sierra Club's purposes in filing suit.  It therefore

provides a brief summary of Ameren's opacity violations and the relief sought by Sierra Club.

**A.  Ameren's violations of the opacity limits.**

Sierra Club brings this Clean Air Act ("CAA") citizen suit because by Ameren's own

admission its coal-fired power plants in the St. Louis area (Labadie, Meramec, and Rush Island)

exceeded their allowable "opacity" limits **more than 8,000 times** from 2009 through September

2015.  What is opacity?  As Judge Fleissig stated, "Opacity refers to a plant's visible emissions,

measured as a percentage of the amount of light being transmitted through a plume."  (Doc. 33 at

2.)  The opacity limit at issue here is 20% (with certain exceptions), as set by Ameren's

operating permits and the Missouri state implementation plan (SIP) approved by U.S. EPA.

Why is opacity important?  Again, to quote Judge Fleissig, opacity is important because it

is an indicator of particulate pollution:

> Federal courts interpreting the CAA have recognized that, as Plaintiff contends,
> "[b]ecause opacity sometimes is easier to measure than particulates, it is
> commonly used for indirectly monitoring and limiting the amount of particulates

in emissions." *Bethlehem Steel Corp. v. EPA*, 782 F.2d 645, 648 (7th Cir. 1986) (also noting that opacity "is a proxy for particulate emissions");…[*Sierra Club v.*] *TVA*, 430 F.3d [1337], at 1341 [11[th] Cir. 2005] (noting that although "opacity is not a pollutant," it "is important in the Clean Air Act regulatory scheme as an indicator of the amount of visible particulate pollution being discharged by a source").

*Id.*, at 9-10.  Ameren's contention that this case only concerns "how smoke…appears, and not what it contains" is false.  (Doc. 112 at 4.)  Ameren's contention is further belied by its own official documents that refer to opacity as particulate matter in the form of flyash (the byproduct of coal combustion) or unburned coal particles.

Particulate matter or "PM" pollution is important because it is dangerous to human health.  Small particles less than 10 micrometers ($PM_{10}$), including finer particles ($PM_{2.5}$), pose the greatest threat because they can get deep into human lungs, causing myriad health effects, including respiratory and cardiovascular illness.

Ameren's 8,000-plus opacity exceedances are **undisputed** because they are based on Ameren's own self-reporting to the Missouri Department of Natural Resources ("MDNR"). These quarterly self-reports (called Excess Emissions Reports or "EERs") must identify all six-minute averages of opacity that exceed the opacity limit.  When Ameren sends EERs to the government, Ameren officials certify them as "true, accurate and complete."  Thus, the EERs constitute **admissions** that Ameren has exceeded its permit limitations.  *See, e.g.*, *U.S. v STABL, Inc.*, 800 F.3d 476, 484 (8th Cir. 2015) (self-reported records on exceedances are adoptive admissions where they are certified to the government as true and accurate pursuant to the applicable regulations and operating permit).  Moreover, the CAA "imposes strict liability" for violations.  *Pound v. Airosol Co*., 498 F.3d 1089, 1097 (10th Cir. 2007).

Discovery has shown that many of Ameren's 8,000-plus opacity exceedances are due to its outdated, failing equipment.  For years, Ameren has been told by its retained consultants and

itself stated that its pollution control equipment (primarily electrostatic precipitators or "ESPs") are deteriorating and nearing the end of their useful lives, leading to a recurring pattern of problems causing excess emissions. The evidence will show that these problems are neither sudden nor infrequent, and are reasonably preventable. As Sierra Club's expert engineer, Bill Powers, P.E., will testify, Ameren's ESPs were not designed to handle Powder River Basin coal (which Ameren switched to in the 1990s), and cannot maintain continuous compliance with the opacity regulations -- hence, the many thousand exceedances.

A key question at trial will be whether any regulatory exemptions apply to Ameren's opacity exceedances.  Missouri regulations provide that violations of the opacity limits *may* be excusable if attributable to start-up, shut down, or malfunction conditions ("SSM").  10 CSR 10-6.220(3)(C).  How do we know if a potential SSM exemption applies?  The answer is straightforward:  Ameren plant employees who monitor the plant equipment are required to assign one of eight "reason codes" to explain why an opacity exceedance has occurred.  These reason codes make clear whether an exceedance has occurred due to starting up or shutting down the equipment, or whether the exceedance is due to malfunctioning equipment.  Other reason codes (*e.g.*, "sootblowing," "other known cause," or "unknown cause") by their own definition *exclude* an SSM defense, and so we know that an SSM defense is inapplicable in those instances.  In this case, there are several thousand reason codes assigned by Ameren's plant operators that by their own terms negate the possibility of an SSM defense, a fact acknowledged by Ameren's corporate designee.[1]

## B.  Injunctive and monetary relief sought for Ameren's opacity violations.

Sierra Club seeks injunctive relief to ensure future compliance with the CAA, as well as statutory penalties for past violations.  For months, the majority of the 13 expert witnesses in this

---

[1] Ex. A (deposition of Stephen Hughes (01/20/16)) at 229-36.

case have been filing numerous expert reports (initial, responsive, and rebuttal) that address both the potential monetary penalties based upon the number of opacity violations, as well as the engineering remedies available to prevent future violations.

Monetary Penalties.  The CAA provides for a maximum penalty of $37,500 per day of violation.  42 U.S.C. §7413(d)(1); 40 C.F.R. §19.4.  Sierra Club's primary expert witness, Bill Powers, P.E., has presented an extensive analysis of the number of opacity violations that occurred at each plant, as well as the number of days of violation.  Ameren's expert witnesses, in turn, have addressed Mr. Powers' calculations in their reports.  As Ameren has been advised many times, Sierra Club will ask the Court to award the maximum penalty amount, *i.e.*, the number of days of violation multiplied by $37,500.  Indeed, a majority of courts calculate penalties using a "top-down" approach in which they "generally presume that the maximum penalty should be imposed" and then consider whether mitigation is warranted. *See, e.g.*, *U.S. v. B&W Inv. Properties*, 38 F.3d 362, 368 (7th Cir. 1994); *U.S. v. Anthony Dell'Aquilla, Enterprises & Subsidiaries*, 150 F.3d 329, 338 (3rd Cir. 1998); *Pound*, 498 F.3d at 1095; *U.S. v. Marine Shale Processors*, 81 F.3d 1329, 1337 (5th Cir. 1996).  Thus, it is Ameren's burden to prove that something less than the maximum penalty should be imposed.

Injunctive Relief.  Sierra Club's primary interest is ensuring Ameren's future compliance with its opacity limits.  Upon a liability finding, Sierra Club will ask the Court to enjoin Ameren's violation of the opacity limits, and to order that Ameren undertake the steps necessary to come into compliance.  Mr. Powers has submitted detailed expert reports which describe several different options to minimize unlawful emissions, including conversion to natural gas, upgrading its ESPs, installing fabric filters (*i.e.*, "baghouses"), or operating units at reduced load (which Ameren routinely does to reduce opacity).  Ameren's stable of experts, in turn, have provided their critiques of Mr. Powers' opinions.

During the next month, the parties will depose each others' experts regarding, *inter alia*, the number of Ameren's opacity violations, and the options available to minimize violations.

## DISCUSSION

Sierra Club's responses and objections to the discovery requests at issue are fully consistent with Rule 26(b)(1)'s revised standard, which allows for discovery

> …regarding any nonprivileged matter that is relevant to any party's claim or defense **and** proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1) (2015) (emphasis added).  Thus, even if the information sought is relevant, "[t]he Court must limit discovery if:  (1) the requested discovery is unreasonably cumulative, duplicative, or can be obtained from another source that is more convenient; (2) the party seeking discovery has had ample opportunity to obtain the information; or (3) the discovery is not proportional to the needs of the case."  *Rhone v. Schneider Nat'l Carriers, Inc.*, 2016 WL 1594453 (E.D.Mo. Apr. 21, 2016).

**A.  Rule 30(b)(6) Topic No. 1:  Sierra Club will produce a witness regarding the injunctive relief sought by Sierra Club.**

As Sierra Club advised Ameren several weeks ago, Sierra Club will present a Rule 30(b)(6) designee to testify regarding Topic No. 1.  Ameren's complaints are therefore meritless.  Topic No. 1 seeks testimony on, among other things, "the specific injunctive relief Sierra Club will seek at trial, and all facts it will offer regarding that requested injunctive relief."  Although Topic No. 1 is objectionable for numerous reasons,[2] Sierra Club will nevertheless present Bruce

---

[2] In addition to the reasons discussed above, Sierra Club also objected to Topic No. 1 because it is vague and ambiguous, overly broad and unduly burdensome as to subject matter, and is not proportional to the needs of the case.  By way of example, the topic demands testimony regarding "all facts" supporting the requested injunctive relief, which could cover most facts to be presented by Sierra Club at trial.  Thus, it

Nilles, Senior Campaign Director for Sierra Club's Beyond Coal Campaign, to testify at the Rule 30(b)(6) deposition on June 3 regarding the injunctive relief sought by Sierra Club.

As Mr. Nilles will testify, Sierra Club seeks an order enjoining Ameren from operating out of compliance with the applicable opacity limits, and taking such steps as are necessary to comply with those limits, as requested in the first amended complaint.  (Doc. 10 at 19.) Obviously, the best available method for achieving compliance with opacity limits is a technical subject.  Sierra Club therefore will rely at trial upon Mr. Powers to provide expert testimony about the options available to Ameren to reduce opacity at its three plants, as well as the other issues identified in Topic No. 1, *i.e.*, "the expected emissions reductions or other benefits" associated with these options, and their costs.  These issues are thoroughly addressed in Mr. Powers' reports, and have been reviewed and responded to in painstaking detail by Ameren's stable of expert witnesses.  Mr. Powers will be deposed on May 24.  At that time, Ameren may cross-examine him on the options that he has presented for ensuring compliance with opacity limits at the three plants.  When Mr. Nilles provides Rule 30(b)(6) testimony on June 3, he will obviously have to defer to Mr. Powers on these technical subjects.

Ameren brings this motion to compel in an attempt to force Sierra Club to identify at this juncture "the specific injunctive relief it will ultimately request" if it prevails at trial.  (Doc. 112 at 9.)  Apparently, Ameren seeks to lock in Sierra Club as to *which* of the options discussed by Mr. Powers it will seek at each plant.  However, all of these options remain in play.  If there is a liability finding, the specific injunctive relief that is appropriate will depend on several unknown

---

would be difficult if not impossible to prepare and present a Rule 30(b)(6) witness about "all facts" supporting Sierra Club's request for injunctive relief.  Sierra Club further objects because this topic essentially seeks Sierra Club counsel's trial strategy and calls for information subject to the attorney-client privilege and work-product doctrine.  Sierra Club also objects to the extent this topic suggests that Sierra Club is obligated to decide, or disclose, what specific injunctive relief it will request prior to a liability finding at trial.  Sierra Club further objects because the topic demands lay testimony on matters that are appropriate for, and will be addressed by, expert testimony.

factors including how many opacity violations Ameren is found liable for, and the amount of the civil penalty imposed by the Court for those violations.

Thus, Ameren's motion to compel regarding Topic No. 1 is not an attempt to obtain discovery, since Sierra Club is producing a designee to testify on the topic. Rather, it is an inappropriate effort to prematurely limit the options that are available to ensure Ameren's future compliance with its opacity limits when the Court evaluates a request for injunctive relief.

**B.   Rule 30(b)(6) Topic No. 2:  Sierra Club cannot reasonably be expected to prepare a witness regarding "all facts Sierra Club will offer at trial" regarding penalties.**

Ameren next seeks to compel Rule 30(b)(6) testimony regarding "[a]ll facts Sierra Club will offer at trial regarding its request for penalties." (Doc. 112 at 9.) Ameren's conclusory argument for this sweeping request is that Sierra Club "has not explained the amount it seeks or the bases" for penalties. (*Id.,* at 12.)

Ameren's argument is disingenuous. Ameren knows that Sierra Club is seeking the maximum penalty of $37,500 per day of violation.[3] Moreover, Ameren knows the mathematical bases for Sierra Club's request for penalties, since Mr. Powers' expert reports include calculations of both the number of opacity violations, and the number of days of violations. Indeed, Ameren's own expert witnesses, Thomas Keeler and Ralph Roberson, have presented their own analyses of the number of opacity violations and days of violations.[4]

---

[3] Ex. B (February 12, 2016 letter from Benjamin Blustein to Molly Wiltshire).

[4] For example, Mr. Roberson acknowledges that Mr. Powers' calculations show 1,681 unique days of violation across the three plants, which would yield a maximum penalty of $63,037,500. Alternatively, Mr. Powers calculated the number of days of violation using the data set employed by Ameren's expert Mr. Keeler, a data set Ameren cannot reasonably dispute. After removing exceedances associated with stack testing that were excused by MDNR, Mr. Powers calculated that Mr. Keeler's data set showed 1,802 unique days in which at least one violation took place across the three facilities, a number that increases to 1,813 days by including certain events that Mr. Powers contends should not have been excluded by Mr. Keeler. These figures yield maximum civil penalty amounts of $67,575,000 and $67,987,500, respectively. Alternatively, Mr. Powers used Mr. Keeler's data to calculate the number of unique days in which at least one exceedance occurred for which Ameren assigned a reason code of 04 ("Unknown Cause"), 06 ("Sootblowing"), or 07 ("Other Known Cause"). Calculating only unique days for these

As to Ameren's request for "*all facts* Sierra Club will offer at trial" regarding penalties, it is difficult to imagine a broader request since much of the evidence to be presented at trial will relate to the Court's consideration of appropriate penalties.  That is because the CAA gives the Court broad discretion to consider multiple pieces of evidence in awarding penalties, including the violator's compliance history and the seriousness of the violations:

> In determining the amount of any penalty to be assessed under this section or section 7604(a) of this title, the Administrator or the court, as appropriate, shall take into consideration (in addition to such other factors as justice may require) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence (including evidence other than the applicable test method), payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.

42 U.S.C. §7413(e)(1); *see also Pound*, 498 F.3d at 1094-95.  As noted above, most courts generally presume that the maximum penalty should be imposed and then consider whether mitigation of the penalty amount is warranted under the Act's enumerated civil penalty factors. Thus, Ameren has the burden of showing that less than the maximum penalty is warranted.

Because the statutory factors underlying penalties include Ameren's compliance history and the seriousness of the violations, nearly every fact at issue in this case may be relevant for the civil penalty calculation. Ameren's demand that Sierra Club prepare a witness regarding "all facts" relating to penalties is overly broad, unduly burdensome, and disproportionate to the needs of the case.  Even under the liberal discovery rules, "there must be a limit to the specificity of the information [a 30(b)(6)] deponent can reasonably be expected to provide."  *U.S. ex rel. Fago v. M&T Mortgage Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006) (holding that a 30(b)(6) designee need not be prepared to testify about the specifics of 63 different loans in dispute).  Neither Mr. Nilles

---

reason codes, after excluding excused testing events, Mr. Powers found 1,072 unique days of violation across the three plants, a number that increases to 1,085 if disputed events are included.  These figures yield maximum civil penalty amounts of $40,200,000 and $40,687,500, respectively.

nor any other witness can possibly be prepared to testify about "all facts" relating to penalties.

Indeed, any testimony that a Rule 30(b)(6) witness could give would be largely duplicative of Sierra Club's expert witnesses, including Mr. Powers, whose testimony encompasses Ameren's compliance history and good-faith efforts to comply, the duration of the violation as established by any credible evidence, and the seriousness of the violations. Thus, Topic No. 2 is duplicative of those experts' depositions and disproportionate.

Moreover, Ameren's request to depose Sierra Club regarding which facts it "will offer at trial" regarding civil penalties is essentially a demand for a preview of Sierra Club's trial exhibits and testimony. *See Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 42-43 (D.Md. 2000). Rule 30(b)(6) does not require responding counsel to "marshal all of its factual proof and prepare a witness to be able to testify on a given defense or counterclaim." *In re Indep. Serv. Organizations Antitrust Litig.*, 168 F.R.D. 651, 654 (D.Kan. 1996) (denying motion to compel a Rule 30(b)(6) deposition about "about facts supporting numerous paragraphs of [defendant's] denials and affirmative defenses"). Furthermore, the identification of facts Sierra Club "will offer at trial" would necessarily reveal the "mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim," which constitutes attorney work product. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). As one court has noted in denying a motion to compel a deposition,

> a party may not secure disclosure of an adversary's counsel's view of the case or trial preparation by seeking disclosure of those facts or sources of facts which counsel considers more significant than others and has devoted time to pursuing.

*U.S. v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 1992 WL 208284, at *11 (S.D.N.Y. Aug. 18, 1992).

For these reasons, Sierra Club has appropriately objected to Topic No. 2 of Ameren's Rule 30(b)(6) notice.

**C. Interrogatory No. 18, RFP No. 84, and Rule 30(b)(6) Topic Nos. 11 and 12:  Sierra Club has provided complete responses to Ameren's discovery regarding "rate cases" and other regulatory proceedings in other states, involving other coal-fired plants.**

Several of Ameren's discovery requests relate to public utility "rate cases" and similar proceedings before public service commissions ("PSCs") in other states, involving other utility companies and coal-fired power plants.  Notwithstanding that these far-flung utility rate cases across the nation are unrelated to the present case, Ameren demands "all submissions, testimony, and filings" made by Sierra Club in any of those proceedings where ESP upgrades, baghouses, or conversion to natural gas were at issue.  (RFP 84.)  It then demands that Sierra Club designate a Rule 30(b)(6) witness to testify regarding all such "submissions, testimony, and filings" as well as Sierra Club's "positions taken" in these various proceedings.  (R. 30(b)(6) Topic Nos. 11-12.)

To begin, these other PSC proceedings have no relevance to the injunctive relief sought in the present case, even if baghouses, ESP upgrades, or natural gas happened to be involved. To obtain a permanent injunction, a plaintiff must show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). Courts weighing the need for injunctive relief "must exercise their equitable discretion in a case-by-case, fact-specific manner." *See Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 (3rd Cir. 2014).  Ameren does not explain how "Sierra Club's positions" in any prior proceeding would tend to show that any fact relevant to the injunctive relief analysis *as applied to Ameren's power plants* is more or less probable.  *See* Fed.R.Evid. 401(a); *Frye v. Ayers*, 2008 WL 4710775, at *2 (E.D.Cal. Oct. 22, 2008) (holding that a party's "conduct in other, prior cases is not relevant to his conduct in this case").

Notwithstanding the lack of relevance, Sierra Club has done its best to respond to these discovery requests, as shown below.

Interrogatory No. 18.  Pursuant to Ameren's request, Sierra Club conducted a reasonable search of its case files and identified nine rate cases since 2009 in which Sierra Club submitted comments regarding the installation or upgrade of an ESP or fabric filter, or conversion to natural gas.  Sierra Club's search was thorough and complete, and Ameren's motion to compel should be denied.

Request for Production No. 84.  For each of the foregoing proceedings, Sierra Club provided case citations and internet links to the public docket so that Ameren could access any of Sierra Club's filings, submissions, or testimony.  This was more than sufficient to meet Rule 34's obligations.  *See, e.g., Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 11 (D.D.C. 2007) ("[t]ypically, courts do not order discovery of public records which are equally accessible to all parties"); *Baum v. Vill. of Chittenango*, 218 F.R.D. 36, 41 (N.D.N.Y. 2003) (denying a motion to compel the production of publicly-available transcripts from an administrative proceeding because "the documents sought are equally accessible to all").  Remarkably, Ameren complains about having to "survey expansive regulatory dockets" (Doc. 12 at 10), which is exactly the burden it wants to shift to Sierra Club.[5]  If Ameren wants these materials, it now has access to them by clicking a mouse.[6]

---

[5] Ameren fails to acknowledge that, as counsel for Sierra Club has informed it, due to the need to comply with state confidentiality statutes governing rate cases, the least burdensome manner for Sierra Club to obtain disclosable, responsive documents would be to access the same public dockets rather than searching its records.  Ex. C (April 14, 2016 e-mail from David Baltmanis to Molly Wiltshire).  It is perfectly reasonable for Sierra Club to provide the means by which Ameren can retrieve the documents itself.

[6] Ameren also carps that Sierra Club has stated that its investigation into rate cases continues, and that has not yet produced any files from rate cases that are not publicly accessible.  These complaints are baseless.  Sierra Club has disclosed the docket information for all responsive rate cases that it has found, all of which are publicly available and equally accessible to Ameren.

Rule 30(b)(6) Topic Nos. 11-12.  Regarding Ameren's request for Rule 30(b)(6) testimony on the rate cases, Sierra Club agreed to meet and confer with Ameren about the particular "comments, positions, or filings" and submissions and testimony provided by Sierra Club in those cases.  (Doc. 112-4 at 7-10.)  This was a reasonable approach, since a designee certainly could not be prepared to testify regarding the entire docket in each rate case.  Rather than hammer out what particular filings and submissions on which it wanted testimony, Ameren filed this motion to compel and argues that "Sierra Club has refused to provide deposition testimony" on these Rule 30(b)(6) topics.  (Doc. 112 at 10.)  Its assertion is flatly untrue.

**D.  RFP 70:  Ameren refused to meet and confer with Sierra Club regarding its request for documents relating to baghouses, and Sierra Club has proposed a reasonable response.**

Ameren's RFP No. 70 goes beyond the "positions taken by Sierra Club" in past proceedings and seeks a much broader category of "all communications and documents since January 1, 2009...relating to baghouses."  (Doc.112-6 at 14.)  Sierra Club properly objected that the request is overbroad, unduly burdensome, seeks irrelevant information, is disproportional to the needs of the case, and seeks information that is privileged or the subject of expert testimony.  (*Id*., at 15.)  Indeed, the request as written, which has no limitation in terms of geographic scope or custodians, would necessitate Sierra Club searching the files of 629 employees across 106 field and chapter offices nationwide.[7]  Nonetheless, in an attempt to reach a reasonable compromise on this RFP, Sierra Club proposed to:

> conduct a reasonable search of the files of the members of the Environmental Law Program [the most likely custodians of responsive documents] for internal assessments, reports, or presentations concerning the testing of baghouses; their real-world efficacy; their performance with respect to opacity and PM; their compliance rates; their failure rates; or identification of particular problems with baghouses, such as fires.[8]

---

[7] Ex. D (March 29, 2016, letter from David Baltmanis to Molly Wiltshire).

[8] Ex. C (e-mail from David Baltmanis to Molly Wiltshire, April 14, 2016).

Unfortunately, Ameren never responded to this proposal, and never sought to confer further on Sierra Club's objections to RFP No. 70.[9]  Ameren's failure to satisfy its meet and confer obligations alone dooms this motion.

As written, RFP No. 70 fails to meet Rule 26(b)(1)'s proportionality requirement for several reasons.  First, as noted above, it is ludicrously broad and burdensome.  Second, the decision whether injunctive relief is required, and what technology upgrades are appropriate and feasible for a coal-fired power plant, are inherently site-specific.  Thus information relating to the "testing, effectiveness, and cost of baghouses" generally, or at facilities *other than* Ameren's plants, is not important to resolving the issue of injunctive relief at *Ameren's* plants. Third, the information sought by RFP No. 70 would provide little or no benefit to the litigation, yet searching for it would impose an undue burden on Sierra Club.

### E.  Rule 30(b)(6) Topic 13:  the request concerning the Missouri Rate Case is disproportional, and Ameren has equal access to the discovery it seeks.

Ameren also demands testimony regarding "Sierra Club's position taken, arguments made, and the testimony of its witnesses," in the Missouri PSC proceedings involving Ameren's Labadie plant. Although it concerns one of the facilities at issue in this litigation, Ameren fails to identify any way in which Sierra Club's positions in a separate matter are relevant to liability, the appropriate amount of penalties, or the factors governing injunctive relief.  The only theory of relevance that Ameren musters is "impeachment" of Sierra Club (Doc. 112 at 13), but it does not even attempt to identify any disputed issue in the case to which such "impeachment" would

---

[9] Ameren's motion regarding RFP 70 in particular should be denied for the additional reason that Ameren's counsel failed to invest "sufficient time and effort into resolving these discovery disputes (instead of simply highlighting them in anticipation for future Court involvement) before the motion was filed[.]"  *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC,* 784 F.3d 1183, 1197 (8th Cir. 2015).  Sierra Club remains willing to search for and produce documents responsive to RFP No. 70, subject to the limitations on subject matter and custodians as set forth in its April 14 e-mail to Ameren; all Sierra Club seeks is some assurance that the proposed limitations are agreeable to Ameren before it begins what will surely be a time-consuming search.

13

apply.  Furthermore, as with other rate cases, this information is equally accessible to Ameren, and it is unlikely that Ameren does not already have such information.  Given that Ameren already knows or can educate itself about "Sierra Club's position taken, arguments made, and the testimony of its witnesses," requiring Sierra Club to prepare a witness to testify about an unrelated matter that is technical in nature is plainly disproportional to the needs of the case. Moreover, to the extent that Ameren's demand for a witness on the subject means that it seeks something *beyond* information that can be obtained from publicly-available filings made by Sierra Club, this request appears to be an attempt by Ameren to use this litigation improperly as a tool to dig into Sierra Club's broader advocacy agenda and to harass it for such advocacy.

In any event, as with other rate cases, Sierra Club has not refused to produce a witness on the subject.  The parties' most recent meet-and-confer efforts did not distinguish between the non-Ameren rate cases and the Labadie matter.  But as with other rate cases, Sierra Club is willing to meet and confer regarding particular positions taken, arguments made, or particular items of testimony on which Ameren seeks testimony, yet Ameren has identified none.

## F.  Rule 30(b)(6) Topic 14:  *Sierra Club v. Energy Future Holdings Corp.* is patently irrelevant and Ameren's request is disproportional and wholly improper.

Finally, Ameren continues to try to focus this case on plants other than its own rather than its own self-admitted violations by seeking 30(b)(6) testimony regarding "Sierra Club's positions taken, arguments made, and the testimony of its witnesses" in a separate opacity case, *Sierra Club v. Energy Future Holdings Corp*, No. 12-cv-108 (W.D.Tex. 2012).  This request is not only disproportional to the needs of the case, it is absurd on its face. As noted above, the CAA is a strict liability statute, *Pound*, 498 F.3d at 1097, and neither Sierra Club's positions elsewhere nor the performance of *other plants* has any bearing on Ameren's admitted violations. Ameren is no more or less likely to have violated the limits in its permits based on what a court

14

determined about opacity at an unrelated facility.  Furthermore, if Ameren seeks the (irrelevant and inadmissible) information on the arguments Sierra Club made, it can access the record of the case itself.  To require Sierra Club to prepare a witness on an unrelated matter is plainly disproportional, and would necessitate untold hours reviewing filings and a voluminous record that has nothing whatsoever to do with Ameren.

Finally, this discovery effort is of a piece with Ameren's prior actions in this case, which are aimed at intimidating and harassing Sierra Club for its unrelated legal and advocacy activities, efforts which Judge Fleissig properly rejected in denying Ameren's prior motions to compel in their entirety.  (Doc. 80.)  The implications of this request are troubling and could have wide-reaching consequences for public advocacy organizations engaged in litigation. Governments defending gun laws against the NRA or abortion statutes against Planned Parenthood would not be permitted to seek detailed discovery about every *prior* challenge those organizations had brought against similar laws. Ameren's similar effort to make this case about the litigation record in *another* case should be rejected.

## CONCLUSION

For the foregoing reasons, Ameren's motion to compel should be denied.

Respectfully submitted,


/s/ Benjamin J. Blustein
Benjamin J. Blustein
One of the Attorneys for Plaintiff

15

Benjamin Blustein  (*pro hac vice*)
Scott A. Entin  (*pro hac vice*)
Deanna N. Pihos (*pro hac vice*)
David Baltmanis (*pro hac vice*)
Miner, Barnhill & Galland, P.C.
325 N. LaSalle St., Ste. 350
Chicago, IL 60654
Tel:  (312) 751-1170
Fax:  (312) 751-0438
bblustein@lawmbg.com
sentin@lawmbg.com
dpihos@lawmbg.com
dbaltmanis@lawmbg.com

Sarah E. Siskind (*pro hac vice*)
Miner, Barnhill & Galland, P.C.
44 E. Mifflin St., Ste. 803
Madison, WI 53703
Tel:  (608) 255-5200
Fax:  (608) 255-5380
ssiskind@lawmbg.com

Sunil Bector (*pro hac vice*)
Andrea Issod (*pro hac vice*)
Sierra Club
85 Second St., Second Fl.
San Francisco, CA 94105
Tel:  (415) 977-5759
Fax:  (415) 977-5793
sunilbector@sierraclub.org
andrea.issod@sierraclub.org

James N. Saul (*pro hac vice*)
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6929
Fax:  (503) 768-6642
jsaul@lawclark.edu